UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Robert Carroll                                  )
3328 17th Street, NW                            )            **Demand Jury Trial**
Washington, DC 20010,                           )
                                                )
    And                     )
                                                )
Monica Carroll                                  )
3328 17th Street, NW                            )
Washington, DC 20010,                           )
                                                )
     Plaintiffs,      )
                                                )
     v.               )
                                                )
Fremont Investment & Loan                       )
1401 Willow Pass Road, Suite 50                 )
Concord, CA 94520,                              )
                                                )
    Serve: Registered Agent )
    CT Corporation Systems  )
    1015 15th Street, NW    )
    Washington, DC 20005,   )
                                                )_____
    And                     )
                                                )
Litton Loan Servicing LP                        )
4828 Loop Central Drive                         )
Houston, TX 77081                               )
                                                )
    Serve: Registered Agent )
      Corporate Service Company )
      1090 Vermont Avenue, NW )
      Washington, DC 20005 )
                                                )
    And                     )
                                                )
Premier Mortgage Solutions Services, Inc.       )
9200 Basil Court, Suite 100                     )
Hyattsville, MD 20774,                          )
                                                )

<u>Serve</u>: Registered Agent                )
CT Corporation Systems                      )
1015 15th Street, NW             )
Washington, DC 20005                        )
                                            )
        <u>And</u>                          )
                                            )
Jeffrey Smith                               )
13101 Bar Geefe Court                       )
Upper Marlboro, MD 20774                    )
                                            )
        <u>And</u>                          )
                                            )
Frank Okebugwu                              )
c/o Smith-Myers Corporation                 )
9200 Basil Court, Suite 100                 )
Upper Marlboro, MD 20774,                   )
                                            )
        <u>And</u>                          )
                                            )
Smith-Myers Corporation                     )
9200 Basil Court, Suite 100                 )
Upper Marlboro, MD 20774,                   )
                                            )
        <u>Serve</u>: Registered Agent      )
        CT Corporation Systems              )
        1015 15th Street, NW     )
        Washington, DC 20005                )
                                            )
        <u>And</u>                          )
                                            )
J.G. Enterprises LLC                        )
9200 Basil Court, Suite 100                 )
Upper Marlboro, MD 20774,                   )
                                            )
        <u>Serve</u>: Registered Agent or   )
                Managing Agent              )
                                            )
        <u>And</u>                          )
                                            )
Shannon Ingram                              )
954 Dunloring Court                         )
Upper Marlborro, MD 20774                   )



```
                                              )
       And                                    )
                                              )
JMJ Appraisal Services, LLC                   )
954 Dunloring Court                           )
Upper Marlborro, MD 20774                     )
                                              )
       Serve: Registered Agent or             )
              Managing Agent                  )
                                              )
       And                                    )
                                              )
Sheila V. Locke                               )
Smith-Myers Corporation                       )
9200 Basil Court, Suite 100                   )
Upper Marlborro, MD 20774,                    )
                                              )
                                              )
              Defendants.                     )
                                              )
```

## FIRST AMENDED COMPLAINT

(Action Under the D.C. Consumer Protection Procedures Act, including Fraud,
Breach of Fiduciary Duty,
Declaratory Judgment and Injunctive Relief)

Preliminary Statement

Plaintiffs, Robert Carroll and Monica Carroll, his daughter, for their Complaint allege:

1.       This action is based on a predatory subprime loan secured by Plaintiffs' home located in the District of Columbia. The original lender, Fremont Investment & Loan ("Fremont"), knew or should have known that Plaintiffs' income had been falsified and that appraised value was fraudulently overstated. Fremont, it has been learned, assigned the mortgage on June 1, 2008, to Litton Loan Servicing L.P. ("Litton"). Defendants engaged in the loan origination and finalization on September 23, 2005, fraudulently and substantially overstated the

Carrolls' income to such an extent that they could not make even the first mortgage payment. The loan imposed monthly mortgage serving and closing costs that are unconscionable in violation of the D.C. Consumer Protection Act (also referred to herein as "CPA"). As assignee, Litton is liable for the wrongful acts to the extent provided under the CPA.  HSBC Bank USA is the current trustee of the mortgage and Wells Fargo Mortgage is the current servicing agent on the mortgage. The Carrolls are currently on the brink of a foreclosure sale.

<u>Jurisdiction and Venue</u>

2.      This action is brought under the D.C. Consumer Protection Act and District of Columbia common law. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332 (diversity) and 1337(a) (supplemental jurisdiction). Plaintiffs are residents of the District of Columbia. The Defendant lenders are foreign corporations authorized to do business in the District of Columbia. Defendant entities and Defendant individuals  engaged in transaction of business in the District of Columbia effecting the rights and interests of District of Columbia residents.

3.      This Court has personal jurisdiction over the non-resident Defendants under the District of Columbia long-arm statute, or because they are entities authorized to do business in the District of Columbia. The exercise of this Court's personal jurisdiction over the non-resident Defendants under the long arm statute will satisfy the minimal requirements of due process under the U. S. Constitution.  *See* D.C. Code § 13-423 (authorizing exercise of personal jurisdiction to the fullest extent permissible under the Due Process Clause of the Constitution); *see also*, Fed. R. Civ. R. 4(k). In this action the property is the source of the underlying claims.

4.      Venue is proper in this district court under 28 U.S.C. § 1391(b) and ©.

Exhibits

| Exhibit Number | Description |
|---|---|
| Exhibit 1 | FDIC Order regarding Fremont Savings & Loam |
| Exhibit 2 | Verification of income of Monica Carroll |
| Exhibit 3 | Verification of income of Robert Carroll |
| Exhibit 4 | HUD-1 of September 23, 2005 |
| Exhibit 5 | Loan Application of July 22, 2005 |
| Exhibit 6 | Loan Application faxed to closing of Sept. 23, 2005 |
| Exhibit 7 | Fremont Underwriting Summary |
| Exhibit 8 | Contract between mortgage broker and Plaintiffs |
| Exhibit 9 | Fremont request for verification |
| Exhibit 10 | Deed of Trust |
| Exhibit 11 | Estimated Payment Letter |
| Exhibit 12 | Itemization of Amounts Financed |
| Exhibit 13 | Good Faith Estimate |
| Exhibit 14 | Fremont request for verification of income for Monica Carroll |
| Exhibit 15 | Notice of Foreclosure Sale |
| Exhibit 16 | Adjustable Rate Note |

Parties

A.      Plaintiffs

5.      Plaintiff Robert Carroll is 79 years old and African-American. He is domiciled in

District of Columbia and is the owner by "joint tenancy" of the townhouse located at 3328 17th

Street, NW, Washington, DC 20010, under a Deed of Trust of July 15, 1992.  The "joint

tenancy" consists of Robert Carroll, and his two daughters, Monica Carroll and Annette Carroll.

Robert Carroll is disabled due to heart and other related serious illnesses. Annette Carroll resides in the District of Columbia.

6.      Plaintiff Monica is 45 years old and African-American. At all times relevant herein, she has been domiciled in District of Columbia.  Monica Carroll is the owner by "joint tenancy" of the residential property and improvements located at 3328 17th Street, NW, Washington, DC 20010. Monica Carroll is severely disabled by dyslexia. At all times relevant herein, Monica Carroll worked one full-time job and at least one part-time job.

B.      Defendant Lenders

7.      Defendant Fremont is a California corporation, having its principal place of business in California. Fremont holds a security interest in the real property and improvements located at 3328 17th Street, NW and has asserted the right to receive a regular revenue from the variable rate note secured by the property. The claims asserted herein against Fremont, arise from the security interest.

8.      Defendant Litton, based on information and belief, is the owner of the mortgage and purports to be the service provider of the mortgage as of June 1, 2008.

C.      Defendant Mortgage Brokers

9.      Defendant Premier Mortgage Solutions Services, Inc. (also known as "Premier Mortgage") is a Maryland corporation having its principal place of business in Maryland. Premier Mortgage changed its name to "Smith-Myers Corporation" (see below) on April 20, 2006. A separate corporation known as Smith-Myers Corporation was formed on January 3, 2005. Premier Mortgage provided loan brokerage services to Plaintiffs resulting in the Fremont loan. Premier Mortgage was formed on January 3, 2005, and has the same principal place of

business as Smith-Myers Corporation, which is 9200 Basil Court, Upper Marlboro, MD 20774.
Premier Mortgage is mortgage broker within the meaning of the Mortgage Lender and Broker
Act, D.C. Code § 26-1101(10). At all times relevant herein, Premier Mortgage has been acting
within the scope of its apparent authority as agent for its principal, which is Fremont. Based on
information and belief, Premier Mortgage is not in good standing in Maryland.

10.      "Premier Mortgage Solutions Services" is a trade name registered under
Maryland law to J.G. Enterprises LLC, a Maryland limited liability company having its principal
place of business at 9200 Basil Court, Upper Marlboro, MD 20774.

11.      Smith-Myers Mortgage Group is a trade name registered under Maryland law to
Smith-Myers Corporation, having its principal place of business at 9200 Basil Court, Upper
Marlboro, MD 20774.

12.      Defendant Smith-Myers Corporation was formed under Maryland law on January
3, 2005.  Premier Mortgage Solutions Services, Inc. changed its name to Smith-Myers
Corporation on April 20, 2006, by amendment to its articles of incorporation. In the alternative,
there are two distinct corporations having the name Smith-Myers Corporations. Smith-Myers
Corporation is a mortgage broker within the meaning of the Mortgage Lender and Broker Act,
D.C. Code § 26-1101(10). Based on information and belief, at all times relevant herein, Smith-
Myers Corporation has been acting within the scope of its apparent authority as agent of
Fremont. Hereinafter the term "Premier Mortgage" means Premier Mortgage Solutions Services,
Inc., Smith-Myers Corporation and J.G. Enterprises, LLC.

13.      Defendant Jeffrey Smith is the president of Smith-Myers Corporation. At all

times relevant herein, Smith was acting within the scope of his apparent authority and is sued in his individual and official capacity. Based on information and belief, Smith-Myers Corporation is mortgage broker within the meaning of the Mortgage Lender and Broker Act, D.C. Code § 26-1101(10).

14.     Defendant Frank Okebugwu is the loan officer who generated the Fremont loan. Based on information and belief, Okebugwu is a resident of the State of Maryland. Okebugwu was the loan broker for the previous refinancing through the loan brokerage firm Residential Funding, Inc., which is a California corporation having a business address at 9200 Basil Court, Upper Marlboro, Maryland 20774. At all times relevant herein, Okebugwu was acting within the scope of his apparent authority and is sued in his individual and official capacity. Okebugwu is mortgage broker within the meaning of the Mortgage Lender and Broker Act, D.C. Code § 26-1101(10).

15.     These mortgage brokerage providers and agents are also referred to herein as mortgage brokerage Defendants.

D.     Defendant Appraiser

16.     Defendant J. G. Enterprises LLC is the owner of the trade name used by Premier Mortgage.

17.     Defendant Sheila V. Locke is an agent or employee of Premier Mortgage who had job duties related to the verification of income of Monica Carroll.

18.     Defendant JMJ Appraisal Service, LLC is a limited liability company formed under Maryland law on June 9, 2005. Its principal place of business is in Maryland. Its charter has been revoked. It is not qualified to do business in the District of Columbia. Its name appears

on the appraisal of the home. At all times relevant herein, JMJ Appraisal Services, LLC was

acting as agent of Premier Mortgage.

19.     Defendant Shannon M. Ingram is a resident of Maryland and was the appraiser

who performed the appraisal that was relied on by Fremont in making the loan. At all times

relevant herein, Ingram was acting as agent of Premier Mortgage.

<u>FACTUAL ALLEGATIONS</u>

E.      <u>Refinancing of the Home</u>

20.     The Carrolls purchased the home located at 3328 17th Street, NW, in July 1992

for $161,500.

21.     The Office of Tax and Assessments valued the home at $461,230 for tax year

October 2004 to September 2005.  This agency valued the home at $557,170 for tax year

October 2005 to September 30, 2006. By comparison, Defendant appraiser valued the home for

more than $700,000 in August 2005.

22.     When the home was refinanced with Fremont the mortgage with The Anyloan

Company carried an annual interest rate of 6.4%.

23.     When the mortgage was refinanced with Fremont, the initial interest rate climbed

to 9.5% and was spiked to 11.5% in November 2007.

F.      <u>Lender, Fremont Investment & Loan</u>

24.      Fremont is a state bank, originally formed in 1984, that has been regulated by the

Federal Deposit Insurance Corporation ("FDIC") since 1984. As of year-end 2007, Fremont

reported assets of $7.6 Billion, 851 employees and 23 domestic offices. In 2006, Fremont

reported a net loss of $879,000. In 2007, it reported a net loss of $143,000.

25.     On May 27, 2007, the FDIC notified Fremont that it was undercapitalized. The FDIC placed Fremont under a "supervisory prompt corrective directive" on  March 26, 2008. Fremont has been accused of risky lending practices in the subprime market. In an action brought by the Massachusetts Attorney General, Fremont is under an injunction in Massachusetts, which was recently upheld by the Court of Appeals on May 2, 2008, barring Fremont from proceeding on 2,200 loan foreclosures relating to its "no documentation" loans made through loan brokers. As a business practice, Fremont has paid loan brokers a financial incentive to make loans. The Carroll loan involved such an incentive, known as a "yield-spread premium."

G.     Two Related Pending Federal Actions

26.     This action is related to *Carroll v. Wells Fargo Mortgage, Inc*.,  03 CV 1837 (HHK) and *Carroll v. Anyloan*, Civil Action No.1: 07cv0018 (HHK).

H.     Loan Application

27.     The Fremont loan was brokered by Premier Mortgage as agent on behalf of its principal, Fremont. The Carrolls reasonably believed that Premier Mortgage was acting at all times within the scope of its apparent authority from its principal Fremont and the Carrolls acted in reliance thereon in taking out the loan. Okebugwu took the loan application on behalf of the Carrolls as a Senior Loan Officer for Premier Mortgage on the telephone before July 22, 2005. The loan was to a fixed rate 30 or 40 years, at an annual interest rate of 7.4%. Monthly payments were to be $1,887.01.  (See Exhibit 8)

28.     Premier Mortgage, however, grossly overstated Monica Carroll's income from her full-time and part-time jobs as well as Robert Carroll's social security income, which was his sole source of income.

29.     The loan application totally misrepresents their assets.

30.     The loan application shows Monica Carroll's total monthly income to be $5,465 and Robert Carroll's total income to be $1,386.25. The combined monthly income was stated to be $6,851. The application initially states the market value of the home to be $650,000. (See chart below)

I.      <u>Verification of Income of Borrowers</u>

31.     Under the loan application of July 22, 2005, Premier Mortgage required the Carrolls to provide written verification of their income. At all times relevant herein, the Carrolls understood that verification of their income was essential to qualifying for and obtaining the Fremont loan. Under the loan application of July 22, 2005 (Ex. 5), and the loan application of September 23, 2005 (Ex. 6), a box was checked to reflect that the income and assets of the co-borrower, who was Robert Carroll, would be used as a basis for loan qualification. While the application states that the Carrolls sought a "conventional" loan, which mean a loan issued to a borrower with an excellent or very good credit rating, they were placed in a subprime loan initially at a 3% higher interest rate.

32.     On August 12, 2005, Family & Child Care Services, Inc. verified that Monica Carroll was earning a full-time income of $32,481 annually, or $2,706 monthly by completing the income verification form provided by Premier Mortgage and returning it to Premier Mortgage. (See Ex. 2)

33.     On August 12, 2005, under a verification of benefits of the Social Security

Administration of May 9, 2005, Premier Mortgage stated that Robert Carroll was receiving

monthly benefits of  $1,107.40, less $78.20 to cover medical insurance costs, which rounded out

to $1,029 each month. (See Ex. 3)

34.     At the time, Plaintiffs had estimated monthly living expenses for food and other

essentials of more than $2,400.

35.     At the time of the closing, when estimated living expenses are added to the

monthly mortgage payments, it was impossible to meet living expenses and pay the mortgage.

J.     Interest, Principal and Property Taxes

36.     The total monthly interest and principal on the Fremont loan was $2,423.60. The

monthly property tax at the time of closing was $214 and hazard insurance was $99.92. The total

monthly charges of principal, interest, taxes and insurance was $2,738.10. (See Ex. 11)

37.     The interest rate on the adjustable Freemont rate note was 9.5% interest for the

first two years. The APR was 10.456%.  The note was signed by Monica Carroll and Robert

Carroll. The interest rate was scheduled to increase to 11.5% on November, 2007. (See Ex. 16)

38.      Under the adjustable rate note, mortgage payments were increased to almost

$3,000 by November, 2007.

K.     Closing and Settlement Charges

39.     The Fremont loan closed at Consumer First Title in Maryland on September 23,

2005.

40.     Of the $10,385,79 in closing costs, least $9,500 related solely to the loan

transaction.  Based on closing costs, for every $2  received in the cash-out it cost the Carrolls

about $1.

41.     Premier Mortgage was paid a brokerage fee of $3,650 from the Carrolls plus a yield spread premium fee outside closing by Fremont of $2,882. Fees paid the mortgage broker totaled $ 6,532.

42.     Under the Good Faith Estimate of Settlement Charges, estimated principal and interest charges were $1,887.01 and the estimated monthly amount for principal, interest, taxes and insurance was $2,074.30. Under the Fremont loan that actually closed, the monthly cost increased by 32% to $2,738.00.  The closing costs were absorbent and unfair.

L.      Miscellaneous

43.     Plaintiffs' home is encumbered by the Fremont high cost loan that imposes unconscionable terms and conditions.  Litton now holds the mortgage.

44.     Had Plaintiffs known and understood the true and accurate material terms of the Fremont loan, they would not have closed, or would otherwise have exercised their right of rescission.  Because of their infirmities they were duped.

45.     The Fremont loan contains numerous unreasonable costs that Defendants knew or should have known Plaintiffs could not afford. Defendants took advantage of Robert Carroll's age and disabilities and Monica Carroll's disability of extreme dyslexia in securing their signatures on the loan documents.

M.      Borrower Income

46.     The Fremont Investment Loan Underwriting Summary (Underwriting Summary) states that Monica Carroll and Robert Carroll had a combined monthly income of $6,851.00. (See Ex. 7) This is materially false.

47.     The Underwriting Summary states total monthly debt servicing costs of $2,772.00.
(See Ex. 7)

48.     The Underwriting Summary states that Plaintiffs debt-to-income ratio is 40.461%
This is materially false. (See Ex. 7) The debt-to-income ratio is the relationship between the
borrower's monthly debt payments and the monthly income. The loan-to-value is a relationship
between the loan amount and the appraised value. The Underwriting Summary states the ratio to
be 41%. This is materially false. The Plaintiffs' income and home value were the products of
fraud perpetrated by Defendants, who conspired and aided and abetted the fraud. The Plaintiffs'
income and home value falsely and fraudulently stated by Defendants in violation of the CPA,
who conspired and aided and abetted those violations.

49.     The debt ratio based on the income of the borrower [$2,666 + $465] of $3,131, and
that of the co-borrower $1,107, was 65.5%.

50.     Monica Carroll's gross income from her full-time job is overstated by 85%. Her
gross income from her part-time job could be overstated by as much as 51%. From November
2005 to January 2006, Monica Carroll also held a temporary part-time job at Providence Hospital.

|  | Monthly Income on Loan Application of July 22, 2005 | Monthly Income on Loan Application Faxed to Settlement of September 23, 2005 | Monthly Income Verified by Employer |
|---|---|---|---|
| Monica Carroll Full-time | $5,000.00<br><br>[this amount is false] | $5,000.00<br><br>[this amount is false] | $2,706.00<br><br>(32,481 annual) |
| Monica Carroll Part Time Health Fitness Corp | $140.00 | none | $140.00 |

| | | | |
|---|---|---|---|
| Monica Carroll Part-time Fitness Edge | $325.00 | none | $325.00 |
| Monica Carroll – Victoria Secret | | $465.00 | |
| Robert Carroll - Full-time | $1,386.25 | $1,386.25 | $1,029.00 |
| House Value | $650,000 | $650,000.00 | |
| Total | $6,851.00 | | |
| % and amount of overstatement of income | | | Overstated income of Monica Carroll from full-time job by $2294 or 85% -------------------------- Overstated income of Monica Carroll from full-time and part time job by $2241 or 70% |

N.    Loan Application of July 22, 2005

51.    The loan application of July 22, 2005, shows monthly income of borrower, Monica Carroll, of $5,485, which includes monthly income from part-time work of $350. It shows monthly income of co-borrower, Robert Carroll, of $1,386.  The home is valued at $650,000.  (Ex. 5)

52.    The loan application purports to state joint assets. There were no joint assets. The loan application misrepresents the assets by identifying the following: life insurance policy of $100,000 but there was no such insurance; real estate of $650,000 but that was a gross overstatement; vested interest in retirement fund of $100,000 but there was no such interest; household furniture of $20,000, which was totally fictitious.

O.    Mortgage Broker

53.    Premier Mortgage had a fiduciary duty to Plaintiffs in connection with the refinancing of the "mortgage loan." (*See, generally*, D.C. Code § 1001(12)) Plaintiffs relied in good faith on their expertise and representations and holding out that they were acting in their best interests.

54.    Premier Mortgage is a mortgage broker within the meaning of the Mortgage Lender and Broker Act of 1996, D.C. Code § 26:1001(10).

55.    Premier Mortgage was required to hold a valid license from the D.C. Department of Banking and Finance. D.C. Code § 1103 (a)

P.    Appraised Value of Home

_____56.    The valuation on the appraisal was artificially inflated by Ingram and JMJ Appraisal Services, LLC. The inflated valuation was essential to Fremont approving the loan.

57.    Based on information and belief, Ingram and JMJ Appraisal Services, LLC conspired with Premier Mortgage to falsely represent the market value of the home to push the loan through closing.

Q.    Lender's Liability for Fraud of Broker

58.    At all times relevant herein, the Defendant mortgage brokerage firms, their agents and employees and the appraiser were the agents of Fremont, were acting within the scope of their authority, apparent and otherwise, on behalf of Fremont, and Plaintiffs relied on that apparent authority.  Their acts and omissions are binding on Fremont.

59.    Facts and information known to Defendant mortgage brokerage firms, their agents

and employees and the appraiser are imputed to Fremont, including knowledge that Plaintiffs' verified monthly income was substantially false and the market value of Plaintiffs' home was substantially overstated.

60.     In the alternative, Fremont acquiesced in and otherwise ratified the acts and omissions of the mortgage broker Defendants, and the appraiser and Fremont has engaged in a pattern and practice of making unconscionable and abusive subprime loans in other jurisdictions.

61.     For all the reasons stated herein, Fremont is liable for the acts of commission and omission of Premier Mortgage, Smith-Myers Corporation, Okebugwu, Smith, Locke and J.G. Enterprises LLC and the appraiser.  Defendants facilitated the consummation of the fraud, which Fremont, in turn, benefitted from.

R.     Appraisal

62.     Ingram appraised the property on August 13, 2005, and claims to have inspected the property and she falsely stated the condition of the property in the appraisal she prepared on a Freddie Mac form: "An interior and exterior inspection found the subject to be in average condition. No repairs are necessary. There is a functional and adequate floor plan with adequately sized rooms and ample closet space. No functional or exterior obsolescence noted."

S.     Damages

63.     Plaintiffs have sustained monetary damages in excess of $75,000. Based on information and belief, the auction block value of the home at foreclosure will be at least $100,000 less than the value on the open market.

64.     Because of the Fremont loan, Plaintiffs have been unable to buy food and other

essentials and also make mortgage payments.  Each day they fear that their home will go to

foreclosure.  Robert Carroll is sick and infirm and Monica Carroll has relentlessly worked in

paying jobs to meet expenses.

65.     Monica Carroll and Robert Carroll have experienced extreme anxiety and

emotional injury for more than three years and now face the continuing threat of imminent

foreclosure at the hands of Fremont and Litton.  The loan is in default.  Neither lender should be

permitted to collect any payments due them under the loan.

66.     Under the Consumer Protection Action, Plaintiffs' damages would be trebled.

T.     <u>Miscellaneous</u>

67.     Based on information and belief, Litton is the assignee and took the mortgage

subject to and to the extent of the claims of Plaintiffs under the common law and D.C. Code § 28-

3808 .

68.     Defendants engaged in switch and bate practices described herein, including

the teaser adjustable interest rate of  9.5%, compared to the 7.4% rate Plaintiffs sought, and

compared to a 6.5% rate under the existing mortgage and resulted in monthly mortgage payments

several hundred dollars more than the existing mortgage.

## COUNT I

### (Unconscionability under Consumer Protection Procedures Act)

69.     Plaintiffs repeat and incorporate by reference each and every allegation set out in

paragraphs 1 through 68.

70.     Defendants violated the unconscionability provisions of the CPA, D.C. Code § 28-3904 ®, which declares it "a violation of this chapter . . . for any person to . . . ® make or enforce unconscionable terms or provision of sales or leases . . . . D.C. Code § 28-3904 ® (2001).

71.     Plaintiffs, who live on meager fixed incomes are African-Americans and long-time residents of the District of Columbia, who placed their trust in Okebugwu, who is a Nigerian national.  Plaintiffs subsequently learned after the Fremont closing that Okebugwu wrongfully participated in the previous refinancing with The Anyloan Company.  Plaintiffs also placed their trust in Premier Mortgage. Plaintiffs had no meaningful choices.

72.     Defendant Fremont induced subprime loan business from the mortgage brokerage Defendants through its vaguely stated but not satisfactory disclosed yield-spread premium. Based on information and belief, the mortgage brokerage Defendants and appraiser conspired to defraud, and aided and abetted the deception, of Plaintiffs.  Defendants solicited business from Plaintiffs, brokered and consummated a loan from Plaintiffs and encumbered Plaintiffs' property. These were unlawful acts under the "trade practices" within the meaning of the CPA.

73.     Under the CPA, factors involved soliciting, processing and closing a transaction under  D.C. Code § 28-3904 (r) include but are not limited to the following:

(1)     "knowledge by the person at the time credit sales are consummated that there was no reasonable probability of payment in full of the obligation by the consumer;"

(2)     "knowledge by the person at the time of the sale or lease of the inability of the consumer to receive substantial benefits from the property or services sold or leased;"

(3)     "gross disparity between the price of the property or services sold or leased and the value of the property or services measured by the price at which similar property or services are readily obtainable in transactions by like buyers or lessees;"

(4)     "that the person contracted for or received separate charges for insurance with respect to credit sales with the effect of making the sales, considered as a whole, unconscionable;" and

(5)     "that the person has knowingly taken advantage of the inability of the consumer reasonably to protect his interests by reasons of age, physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of the agreement, or similar factors."

74.     The CPA, makes it unlawful to misrepresent the authority of a representative or agent to negotiate the final terms of a transaction.

75.     Under the facts alleged herein, Defendants either knew or should have known that there was no reasonable probability that Plaintiffs could make installment payments in full given their verified income and the loan servicing costs making foreclosure inevitable.

76.     Defendants knowingly took advantage of Plaintiffs' inability to reasonably protect their interests in the loan transaction, under the facts alleged herein.  Robert Carroll is infirm, retired and lives on about $1,000 a month in social security income.  Defendants took advantage of him.  Monica Carroll's lack of sophistication and inability to protect her interests rendered her plainly unable to understand the Fremont transaction.  Okebugwu understood those weaknesses and preyed on them, and the other Defendants joined in perpetrating the unjust and unconscionable acts.  The Defendants' motivations were simply greed in a subprime loan that has financially devastated Plaintiffs.

77.     Defendants took advantage of Monica Carroll, based on her educational limitations and dyslexia, limited ability to comprehend the nature of the transaction, her limited resources and her lack of sophistication in light of the debt obligation being assumed.  She was duped.

78.     Defendants took advantage of Robert Carroll, based on his educational limitations and diminished mental capacity, limited ability to comprehend the nature of the transaction, his limited resources and his lack of sophistication, in light of the debt obligation being assumed.  He was duped

79.     Under the District of Columbia Mortgage Lender and Broker Act of 1996, the lender and the loan broker are obligated to provide to the borrower a financing agreement executed by the lender at least 72 hours before the settlement, disclosing, among other things, all points and fees to be paid by the borrower. D.C. Code § 26-1113(a)(2)(D) and § 26-1113(b)(1)[formerly codified at § 26-1013].

80.     Defendants solicited, processed, approved, facilitated and finalized the Fremont loan with knowledge that there was no reasonable probability that Plaintiffs would be able to service or repay it and Litton took it by assignment. Based on information and belief, Defendants did so in furtherance of a pattern and practice of unlawful and abusive subprime loan practices making residential mortgage loans in this and other jurisdiction.

81.     The acts complained of herein are unfair and deceptive trade practices that entitle Plaintiffs to treble damages, reasonable attorney's fees, and punitive damages, as well as an injunctive relief against the unlawful trade practice, alleged herein, and any other relief the Court deems appropriate. *See* D.C. Code § 28-3904(k)(1)

82.     Defendants misrepresented the goods and services, sponsorship, approval, certification, accessories, characteristics, ingredients, use, benefits and quantities.

83.     Defendants misrepresented material facts which had a tendency to mislead

Plaintiffs. See D.C. Code § 28-3904(d) Those misrepresentations included: falsifying the income

of borrower and co-borrower by more than 60%; switch and bait tactics including representing in

the brokerage agreement that refinancing would be at 7.4% interest rate which was changed to

9.5% at a two-year teaser rate; and falsifying the home's market value.  Under the debt-to-income

ratio and the true market value of the home, the Fremont loan never should have been made as

Litton knew.

84.     Defendants failed to state material facts which resulted in misleading Plaintiffs

into executing into believing that they could afford the loan.

85.     Defendants caused Plaintiffs to execute agreements on unconscionable

terms.

86.     Defendants caused Plaintiffs to pay for services that they did not need by falsely

representing that these services were necessary.

87.     Defendants' acts were the direct and proximate cause of Plaintiff's injuries that

include humiliation, pain, suffering and embarrassment.

88.     Defendants committed the acts alleged herein with evil motive and acted with

actual malice or in willful disregard of the rights of Plaintiffs, and did so wilfully, intentionally,

and wantonly, so as to justify the imposition of punitive damages and trebling. Defendant Litton is

named a Defendant under this Count I to the extent of and subject to D.C. Code § 28-3808.

## COUNT II

### (Declaratory Judgment Against Fremont)

89.     Plaintiffs repeat and incorporate by reference each and every allegation set out in paragraphs 1 through 88.

90.     Fremont hid its assignment to Litton and made the assignment on terms that are not known to Plaintiffs.  Fremont did so under its dire financial circumstances and within three weeks of Fremont's notice of foreclosure.  Litton knew of the foreclosure notice before the assignment.

91.     Litton now stands in the shoes of Fremont and holds a financial axe over the heads of Plaintiffs, which impacts every financial decision they make and terrorizes their personal lives daily.  Plaintiffs do not know from one day to the next if they will wind up on the street without a roof over their heads.

92.     Plaintiffs seek declaratory relief against Litton declaring the mortgage unenforceable on grounds of unconscionability under common law and the CPA, and barring Litton from collecting any mortgage payments that may be due it.

## COUNT III

### (Common Law Fraud)

93.     Plaintiffs repeat and incorporate by reference each and every allegation set out in paragraphs 1 through 92.

94.     Defendants knowingly and intentionally made false representations and failed to

make disclosure of material facts alleged herein with knowledge of their falsity and with intent to deceive, and  Plaintiffs acted in reliance on those false representations and failures to disclose.

95.     Defendants fraudulently stated Plaintiffs' income knowing that it was substantially less than the amount verified and the nature and value of assets and the value of the home.

96.     The acts complained of here were egregious and outrageous, and Defendants acted with evil motive, and Defendants acted with actual malice or in willful disregard for the rights of Plaintiff, so as to justify the imposition of punitive damages and trebling.

**COUNT IV**

(Permanent Injunction)

97.     Plaintiffs repeat and incorporate by reference each and every allegation set out in paragraphs 1 through 96.

98.     Plaintiffs seek a preliminary injunction against Fremont and/or Litton during the pendency of this action under Fed. R. Civ. P. 65(a) and a permanent injunction against the foreclosure scheduled for June 10, 2008, (Ex. 15) and enforcement of the trust and provisions of the note and other agreements to prevent permanent injury. See Fed. R. Civ. P. 65.

99.     Plaintiffs seek a preliminary injunction freezing the circumstances in place until there is a greater opportunity to hear the merits of their claim, and Plaintiffs assertions that absent the preliminary injunction, irreparable harm will occur. The harm cannot be cured by money damages alone. The persons against whom the injunction would be entered will not be harmed

excessively by the injunction. There would be minimal impact on third persons if the injunction were issued. Plaintiffs are likely to succeed on their claims.

100.     Factors to be taken into account in weighing issuance of an injunction weigh heavily in favor of Plaintiffs and most importantly, Plaintiffs demonstrate likelihood of success on the merits. Plaintiffs satisfy each of those factors.

101.     Plaintiffs seek a permanent injunction.

**COUNT V**

(Breach of Fiduciary Duty)

102.     Plaintiffs repeat and incorporate by reference each and every allegation set out in paragraphs 1 through 101.

103.     Plaintiffs were owed a fiduciary duty by Defendants.

104.     Defendants breached their fiduciary duty by fraudulently and falsely misrepresenting Plaintiffs' income by 60% and taking a Deed of Trust under a note under terms so unconscionable that a default was inevitable and other wrongful acts alleged herein.

105.     The acts alleged herein were egregious and outrageous. Defendants committed the alleged here due to evil motive and actual malice, in willful disregard of the rights of Plaintiff, so as to justify the imposition of punitive damages.

## COUNT VI

### (Conspiracy to Violate)

106.    Plaintiffs repeat and incorporate by reference each and every allegation set out in paragraphs 1 through 105.

107.     Defendants agreed to participate in one or more unlawful acts, or one of more lawful acts in an unlawful manner, and these actions caused injury to Plaintiffs and, did so pursuant to or in furtherance of a common scheme, and they are, therefore, jointly and severally liable. The claims under this count are not stated as an independent tort under District of Columbia law.

108.    Plaintiffs assert conspiracy for purposes of liability and not as a distinct cause of action under District of Columbia law.

109.    The acts complained of here were egregious and outrageous, and Defendants acted with evil motive, and Defendants acted with actual malice or in willful disregard for the rights of Plaintiffs, so as to justify the imposition of punitive damages.

## COUNT VII

### (Aiding and Abetting Violation)

110.    Plaintiffs repeat and incorporate by reference each and every allegation set out in paragraphs 1 through 109.

111.    Defendants aided and abetted the violations of the Consumer. The claims under this count are not stated as an independent tort under District of Columbia law.

112.    The acts complained of here were egregious and outrageous, and Defendants acted with evil motive, and Defendants acted with actual malice or in willful disregard for the rights of Plaintiffs, so as to justify the imposition of punitive damages.

## COUNT VIII

(Negligence)

113.    Plaintiffs repeat and incorporate by reference each and every allegation set out in paragraphs 1 through 112.

114.    Defendants failed to satisfy the standard of care in making the loan, owed a duty of care to Plaintiffs and the breach of that duty resulted in the harms alleged herein.

115.    The acts complained of herein were willful, wanton, and intentional so as to justify the imposition of punitive damage.

## COUNT IX

(Negligent Supervision)

116.    Plaintiffs repeat and incorporate by reference each and every allegation set out in paragraphs 1 through 115.

117.    Defendants Premier Mortgage had an agency relationship with Fremont. Premier Mortgage had an agency relationship with Okebugwu, the principal failed to supervise the agent under the standard of care and the failure was the proximate cause of injury to Plaintiffs.

118.    The acts complained of here were wilful, wanton, and intentional so as to justify the

imposition of punitive damages.

## COUNT X

### (Gross Negligence)

119.    Plaintiffs repeat and incorporate by reference each and every allegation set out in paragraphs 1 through 118.

120.    Defendants failed to satisfy the standard of care in making the loan, owed a duty of care to Plaintiffs and the breach of that duty resulted in the harms alleged herein.

121.     Defendants were grossly negligent and the acts complained of here were wilful, wanton, and intentional so as to justify the imposition of punitive damages

WHEREFORE, Plaintiffs seek the following relief:

1.    Count I: Unconscionability, Consumer Protection Act

Plaintiffs pray that judgment be entered under D.C. Code § 28-3904® (2001) against Defendants, jointly and severally, for compensatory, treble and punitive damages, rescission of the loan, cancellation of all monthly servicing costs, damages for pain and suffering, among other things, award attorney's fees and costs and such further and additional relief as the Court may deem appropriate.

2.    Count II: Declaratory Judgment

Plaintiffs pray that declaratory judgment be entered against Litton holding that the assigned mortgage is unconscionable and unenforceable in defense to any claims it has or may assert against

Plaintiffs including an action in foreclosure under common law of unconscionability and D.C. Code § 28-3808.

    3.      <u>Count III</u>: <u>Fraud</u>

Plaintiffs pray that judgment be entered against Defendants, jointly and severally, for fraud for compensatory and punitive damages, rescission of the loan, cancellation of all monthly servicing costs, damages for pain and suffering, among other things, award of attorney's fees and costs and such further and additional relief as the Court may deem appropriate.

    4.      <u>Count IV</u>: <u>Injunction</u>

Plaintiffs pray that a preliminary and permanent injunction be issued against Fremont, or in the alternative Litton, or both, from foreclosure, and the award of attorney's fees and costs and such further and additional relief as the Court may deem appropriate, based on violation of the Consumer Protection Act and common law fraud.

    5.      <u>Count V: Breach of Fiduciary Duty</u>

Plaintiffs pray that judgment be entered against all Defendants for breach of fiduciary duty, jointly and severally, for compensatory and punitive damages, rescission of the loan, cancellation of all monthly servicing costs, damages for pain and suffering, among other things, award of attorney's fees and costs and such further and additional relief as the Court may deem appropriate.

    6.      <u>Count VI: Conspiracy</u>

Plaintiffs pray that judgment be entered for conspiracy against all Defendants [not as a separate cause of action under common law, jointly and severally, for compensatory and punitive

damages in committing the acts alleged herein, award of attorney's fees and costs and such further and additional relief as the Court may deem appropriate.

       7.     <u>Count VII: Aiding and Abetting</u>

Plaintiffs pray that judgment be entered against all Defendants [not as a separate cause of action under common law, jointly and severally, for aiding and abetting the violations of the Consumer Protection Act (and treble damages where applicable) for compensatory damages and punitive damages in committing the acts alleged herein, award of attorney's fees and costs, and such further and additional relief as the Court may deem appropriate.

       8.     <u>Count VIII: Negligence</u>

Plaintiffs pray that judgment be entered against Defendants jointly and severally, for negligence for compensatory and punitive damages, and attorney's fees and costs and such further and additional relief as the Court may deem appropriate.

       9.     <u>Count IX: Negligent Supervision</u>

Plaintiffs pray that judgment be entered against Defendants, jointly and severally, for failing to supervise Okebugwu, and other employees, for compensatory and punitive damages, and attorney's fees and costs and such further and additional relief as the Court may deem appropriate.

     10.     <u>Count X: Gross Negligence</u>

 Plaintiffs pray that judgment be entered against Defendants, jointly and severally, gross negligence for failure to supervise Okebugwu, Locke and other employees, for compensatory and

punitive damages, and attorney's fees and costs and such further and additional relief as the Court

may deem appropriate.

Respectfully submitted,


Dated: January 9, 2009                    _____/s/_____

C. Michael Tarone, D.C. Bar # 159228

Tarone & McLaughlin

900 17th Street, NW, Suite 1250

Washington, DC 20006

Tel. (202) 293-3200

Fax (202)429-1851


Counsel for Plaintiffs


ROBERT CARROLL

MONICA CARROLL


**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable as a matter of law.


_____/s/_____

C. Michael Tarone

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Robert Carroll, *et al.*, ) | Civil Act. No. : 1:08-cv-00900 (HHK) |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Fremont Investment & Loan, *et al*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

ORDER


UPON CONSIDERATION of Plaintiffs' Re-Filed Motion to Amend the Complaint, the

memorandum in support thereof, the opposition thereto and the entire record herein, it is this ___

day of January r 2009, hereby ordered that the complaint is deemed filed the date of the originally

filed and the motion to amend is granted *nunc pro tunc* as of September 22, 2008.

SO ORDERED.


_____
Henry H. Kennedy
District Court Judge


Copies to: See next page

Consumer First Title, LLC

> Serve
> Craig L. Sarner
> Bonner Kiernan Treback & Crociata
> 1233 20th Street, NW, Suite 800
> Washington, DC 20036

Frank Okebugwu

> Serve
> Frank Okebugwu
> c/o Smith-Myers Corporation
> Upper Marlboro, MD 20774

JG Enterprises, LLC

> Serve
> Jeffrey Smith
> c/o Smith-Myers Corporation
> 9200 Basil Court, Suite 100
> Upper Marlboro, MD 20774

Jeffrey Smith

> Serve
> Jeffrey Smith
> c/o Smith-Myers Corporation
> 9200 Basil Court, Suite 100
> Upper Marlboro, MD 20774

Fremont Investment & Loan

> Serve:
> Harold G. Belkowitz, Esquire
> Ober Kaler Grimes & Shriver
> 1401 H Street, NW, Suite 500
> Washington, DC 209005

PLAINTIFF'S
EXHIBIT

FEDERAL DEPOSIT INSURANCE CORPORATION

WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of<br><br>FREMONT INVESTMENT & LOAN<br>BREA, CALIFORNIA<br><br>FREMONT GENERAL CREDIT<br>CORPORATION, and<br>FREMONT GENERAL CORPORATION,<br>as institution-affiliated parties of<br>FREMONT INVESTMENT AND LOAN<br><br>(INSURED STATE NONMEMBER BANK) | SUPERVISORY<br>PROMPT CORRECTIVE<br>ACTION DIRECTIVE<br><br>FDIC-08 – 069 PCAS |

WHEREAS, Fremont Investment & Loan, Brea, California (the "Bank") is an undercapitalized depository institution as that term is defined in Section 38(b)(1) of the Federal Deposit Insurance Act ("Act"), 12 U.S.C. §1831o(b)(1), and Section 325.103 of the Federal Deposit Insurance Corporation ("FDIC") Rules and Regulations, 12 C.F.R. §325.103;

WHEREAS, pursuant to a letter, dated May 24, 2007, notifying the Bank of its undercapitalized capital category, the FDIC required the Bank to submit an acceptable capital restoration plan to the FDIC by July 9, 2007;

WHEREAS, the Bank submitted a capital restoration plan on August 9, 2007 which the FDIC determined was unacceptable pursuant to section 38(e)(2) of the Act, 12 U.S.C. § 1831o(e)(2), and section 325.104 of the FDIC Rules and Regulations, 12 C.F.R. § 325.104;

WHEREAS, the Bank submitted a revised capital restoration plan on November 9, 2007 which the Bank stated was obsolete on March 17, 2008;

WHEREAS, the Bank has not submitted an acceptable capital restoration plan within the time allowed pursuant to section 38(e)(2) of the Act, 12 U.S.C. § 1831o(e)(2);

- 2 -

WHEREAS, the Bank has failed to comply with the capital maintenance provisions contained in paragraph 18 of the Order to Cease and Desist issued against the Bank, Fremont General Credit Corporation, and Fremont General Corporation, on March 7, 2007;

WHEREAS, the financial condition of Fremont General Corporation, the company having ultimate control over the Bank continues to deteriorate;

WHEREAS, on February 28, 2008, Fremont General Corporation announced that in connection with ongoing reviews, the Bank may need to record additional asset write-downs and reserves that could have an adverse effect on the Bank's regulatory capital levels and Fremont General Corporation's overall financial condition;

WHEREAS, Fremont General Corporation also announced that it has limited sources of cash available to satisfy its obligations;

WHEREAS, having determined that divestiture of the Bank by the Bank's parent companies, Fremont General Credit Corporation and Fremont General Corporation, would improve the Bank's financial condition and future prospects; and

WHEREAS, the actions in this directive are necessary to carry out the purposes of Section 38 of the Act including Section 38(e)(5), 12 U.S.C. § 1831o(e)(5);

THEREFORE, the FDIC finds it necessary, in order to carry out the purposes of Section 38 of the Act, to issue this SUPERVISORY PROMPT CORRECTIVE ACTION DIRECTIVE without providing notice as set forth in Section 308.201(a)(1) of the FDIC's Rules of Practice and Procedure, 12 C.F.R. §308.201(a)(1), and hereby issues this SUPERVISORY PROMPT CORRECTIVE ACTION DIRECTIVE pursuant to Section 38 of the Act, 12 U.S.C. §1831o, and Section 308.201(a)(2) of the FDIC's Rules of Practice and Procedure, 12 C.F.R. §308.201(a)(2).

- 3 -

## SUPERVISORY PROMPT CORRECTIVE ACTION DIRECTIVE

IT IS HEREBY DIRECTED, that within 60 days of the effective date of this Directive, the Bank and/or the Bank's parent companies, Fremont General Credit Corporation and Fremont General Corporation, shall take one or more of the following actions to recapitalize the Bank:

1. The Bank shall sell enough voting shares or obligations of the Bank so that the Bank will be adequately capitalized after the sale; and/or

2. The Bank shall accept an offer to be acquired by a depository institution holding company or to combine with another insured depository institution; and

3. Fremont General Credit Corporation and Fremont General Corporation shall divest themselves of the Bank; and

FURTHER DIRECTED, that during the period this Directive is in effect, the Bank restrict the interest rates that the Bank pays on deposits to the prevailing rates of interest on deposits of comparable amounts and maturities paid by FDIC insured depository institutions in the State of California;

FURTHER DIRECTED, that during the period this Directive is in effect, the Bank shall comply with Section 23A of the Federal Reserve Act as if subsection (d)(1) of that section (exempting transactions with certain affiliated institutions) did not apply;

FURTHER DIRECTED, that during the period this Directive is in effect, the Bank shall make no capital distributions to its parent or any affiliate of the Bank or its parent, nor shall the Bank pay any bonuses to, or increase the compensation of, any director or officer of the Bank. The term "capital distribution" shall be defined as at Section 38(b)(2)(B) of the Act (12 U.S.C. § 1831o(b)(2)(B));

- 4 -

FURTHER DIRECTED, that the provisions of this SUPERVISORY PROMPT

CORRECTIVE ACTION DIRECTIVE shall not affect the obligations of the Bank, Fremont

General Credit Corporation, or Fremont General Corporation pursuant to any other action issued

against the Bank, Fremont General Credit Corporation, and Fremont General Corporation by the

FDIC, or agreement between the Bank, Fremont General Credit Corporation, Fremont General

Corporation, and the FDIC, including the existing Order to Cease and Desist dated March 7,

2007;

FURTHER DIRECTED, that this SUPERVISORY PROMPT CORRECTIVE ACTION

DIRECTIVE shall become effective immediately upon its receipt by the Bank, Fremont General

Credit Corporation, and Fremont General Corporation.

Each provision of this SUPERVISORY PROMPT CORRECTIVE ACTION

DIRECTIVE shall be binding upon the Bank, its directors, officers, employees, agents,

successors, assigns, Fremont General Credit Corporation, Fremont General Corporation, and

other institution-affiliated parties of the Bank.

Each provision of this SUPERVISORY PROMPT CORRECTIVE ACTION

DIRECTIVE shall remain effective and enforceable until the Bank has been adequately

capitalized on average for four (4) consecutive calendar quarters, except to the extent that any

provision shall be modified, terminated, suspended, or set aside by the FDIC.

The Bank, Fremont General Credit Corporation, and Fremont General Corporation may

file a written appeal of this SUPERVISORY PROMPT CORRECTIVE ACTION DIRECTIVE

within fourteen (14) calendar days from the date of the issuance of this Directive as provided in

section 308.201(a)(2) of the FDIC's Rules of Practice and Procedure, 12 C.F.R. §308.201(a)(2).

The appeal shall be filed with Stan Ivie, Regional Director, Federal Deposit Insurance

- 5 -

Corporation, San Francisco Regional Office, 25 Jessie Street at Ecker Square, San Francisco,

California 94105, with a copy to Joseph J. Sano, Regional Counsel, Federal Deposit Insurance

Corporation, San Francisco Regional Office, 25 Jessie Street at Ecker Square, San Francisco,

California 94105.

     Pursuant to delegated authority.

     Dated this 26th day of March, 2008.

Stan Ivie
Regional Director
Division of Supervision and Consumer Protection

PLAINTIFF'S
EXHIBIT
2

Aug-12-05  11:52am  From-FAT   C    SERVICES        2028710503        150  P.002/003  F-363

# Request for Verification of Employment

CARROLL, MONI

**Privacy Act Notice:** This information is to be used by the agency collecting it or its assignee in determining whether you qualify as a prospective mortgagor under its program. It will not be disclosed outside the agency except as required and permitted by law. You do not have to provide this information, but if you do not your application for approval as a prospective mortgagor or borrower may be delayed or rejected. The information requested in this form is authorized by Title 38, USC, Chapter 37 (if VA); by 12 USC, Section 1701 et. seq. (if HUD/FHA); by 42 USC, Section 1452b (if HUD/CPD); and Title 42 USC, 1471 et. seq., or 7 USC, 1921 et. seq. (if USDA/FmHA).

**Instructions:** Lender - Complete items 1 through 7. Have applicant complete item 8. Forward directly to employer, named in item 1.
Employer - Please complete either Part II or Part III as applicable. Complete Part IV and return directly to lender named in item 2.
The form is to be transmitted directly to the lender and is not to be transmitted through the applicant or any other party.

## Part I - Request

| | |
|---|---|
| 1. To (Name and address of employer)<br>HUMAN RESOURCES/ PAYROLL<br>FAMILY & CHILD CARE SERV. OF WASH DC<br>929 L STREET, N.W.<br>Washington, DC 20001 | 2. From (Name and address of lender)<br>SHEILA V. LOCKE<br>PREMIER MORTGAGE SOLUTIONS<br>9200 BASIL COURT, SUITE 100<br>UPPER MARLBORO, MD 20774 |

I certify that this verification has been sent directly to the employer and has not passed through the hands of the applicant or any other interested party.

| 3. Signature of Lender | 4. Title<br>LOAN OFFICER | 5. Date<br>08/11/2005 | 6. Lender's No. (Optional) |
|---|---|---|---|

I have applied for a mortgage loan and stated that I am now or was formerly employed by you. My signature below authorizes verification of this information.

| 7. Name and Address of Applicant (Include employee or badge number)<br>MONICA S CARROLL, SSN: 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<br>3328 17TH STREET, NW<br>Washington, DC 20010 | 8. Signature of Applicant |
|---|---|

## Part II - Verification of Present Employment

| 9. Applicant's Date of Employment | 10. Present Position<br>Activities Coordinator | 11. Probability of Continued Employment<br>Yes |
|---|---|---|

| 12A. Current Gross Base Pay (Enter Amount and Check Period) | | 13. For Military Personnel Only | | 14. If Overtime or Bonus is Applicable, Is its Continuance Likely? |
|---|---|---|---|---|
| $ 32481 | ☒ Annual   ☐ Hourly<br>☐ Monthly  ☐ Other (Specify)<br>☐ Weekly | Pay Grade | | Overtime  Yes ☐  No ☑<br>Bonus     Yes ☐  No ☑ |
| | | Type | Monthly Amount | |
| | | Base Pay | $ | 15. If paid hourly-average hours per week<br>37.5 hours per wk |

### 12B. Gross Earnings

| Type | Year To Date | Past Year | Past Year | | | |
|---|---|---|---|---|---|---|
| Base Pay | Thru<br>$ 32481 | $ | $ | Rations | $ | 16. Date of applicant's next pay increase |
| Overtime | $ 0 | $ | $ | Flight or<br>Hazard | $ | 10-01-05 |
| | $ 0 | | | Clothing | $ | 17. Projected amount of next pay increase |
| Commissions | $ | $ | $ | Quarters | $ | |
| Bonus | $ 0 | $ | $ | Pro Pay | $ | 18. Date of applicant's last pay increase |
| | | | | Overseas or<br>Combat | $ | 10-01-04 |
| Total | $ 32481 | $ | $ | Variable Housing<br>Allowance | $ | 19. Amount of last pay increase |

20. Remarks (If employee was off work for any length of time, please indicate time period and reason)

## Part III - Verification of Previous Employments

| 21. Date Hired 7-10-99 | 23. Salary/Wage at Termination Per (Year)(Month)(Week) | | | |
|---|---|---|---|---|
| 22. Date Terminated | Base | Overtime | Commissions | Bonus |
| 24. Reason for Leaving | | 25. Position Held | | |

## Part IV - Authorized Signature

Federal statutes provide severe penalties for any fraud, intentional misrepresentation, or criminal connivance or conspiracy purposes to influence the issuance of any guaranty or insurance by the VA Secretary, the U.S.D.A., FmHA/FHA Commissioner, or the HUD/CPD Assistant Secretary.

| 26. Signature of Employer<br>Noha Melton | 27. Title (Please print or type)<br>Director Human Resources | 28. Date |
|---|---|---|
| 29. Print or type name signed in item 26<br>NOHA MELTON | 30. Phone No.<br>202 289-1510 EX149 | 8-12-05 |

CALYX Form voe.frm 5/97

PLAINTIFF'S
EXHIBIT

3



**Department of
Veterans Affairs**
Medical Center
50 Irving Street, N.W.
Washington D.C. 20422

Elisse C. Collins
Washington VA Medical Center
50 Irving Street, NW
Cardiology – 151-D
Washington, DC 20422

September 19, 2005

Premier Mortgage Solutions:
Loan officer
9200 Basil Court, Suite 100
Upper Marlboro, MD 20774

Dear Mr. Okebngwu:

    Mr. Robert L. Carroll has been employed by National Caucus Center
On Black Aging Inc., for 4 years as center aide at the Columbia Senior Center
Due to his health condition Mr. Carroll is temporary not working at this time
Because he is taking therapy for his leg and is placed in previous medical
appointment at the VA Medical Center in the Primary Care Clinic. We

encourage Mr. Carroll to start back working for health reasoning starting
April 2009. At Columbia Senior Center. I hope I was able to answer your
question due to the patients privacy HIPAP.

Sincerely,

Elisse C. Collins, MD

Carr-Fremont00001

Hug 12 05 03:08p                                    835147                        p.6

# Social Security Administration

Date: May 9, 2005
Claim Number: 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A

031844

ROBERT L CARROLL
3328 17TH ST NW
WASHINGTON DC 20010-1802

You asked us for information from your record. The information that you
requested is shown below. If you want anyone else to have this information,
you may send them this letter.

## Information About Current Social Security Benefits

Beginning December 2004, the full monthly Social Security benefit before any
deductions is $ 1107.40.

We deduct $78.20 for medical insurance premiums each month.

The regular monthly Social Security payment is $ 1029.00.
(We must round down to the whole dollar.)

Social Security benefits for a given month are paid the following month. (For
example, Social Security benefits for March are paid in April.)

Your Social Security benefits are paid on or about the third of each month.

## Information About Past Social Security Benefits

From December 2003 to November 2004, the full monthly Social Security
benefit before any deductions was $ 1078.40.

We deducted $66.60 for medical insurance premiums each month.

The regular monthly Social Security payment was $ 1011.00.
(We must round down to the whole dollar.)

## Date of Birth Information

The date of birth shown on our records is August 13, 1929.

## Medicare Information

You are entitled to hospital insurance under Medicare beginning August 1994.

See Next Page

Carr-Fremont00006

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A                                      Page 2 of 2

**Medicare Information**

You are entitled to medical insurance under Medicare beginning August 1994.

**Type of Social Security Benefit Information**

You are entitled to monthly retirement benefits.

**If You Have Any Questions**

If you have any questions, you may call us at 1-800-772-1213, or call your local Social Security office at 202-673-5159. We can answer most questions over the phone. You can also write or visit any Social Security office. The office that serves your area is located at:

                        SOCIAL SECURITY
                        7820 EASTERN AVENUE NW
                        WASHINGTON, DC 20012

If you do call or visit an office, please have this letter with you. It will help us answer your questions.

                        Linda S. McMahon
                        Deputy Commissioner
                        for Operations



PLAINTIFF'S
EXHIBIT

Previous editions are obsolete

form HUD-1 (3/86) ref Handbook 4305.2

**CONSUMER FIRST TITLE, LLC**

Certified True Copy

A.                                                    Settlement Statement   FINAL

U.S. Department of Housing and Urban Development

OMB No. 2502-0265 (expires 9/30/2006)

| B. TYPE OF LOAN | | |
|---|---|---|
| 1. ☐ FHA | 2. ☐ FmHA | 3. ☒ Conv. Unins |
| 4. ☐ VA | 5. ☐ Conv. Ins. | |

| 6. FILE NUMBER | 7. LOAN NUMBER |
|---|---|
| CF05-526LE | 927000166086 |

8. MORTGAGE INSURANCE CASE NUMBER

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U. S. Code Section 1001 and Section 1010.

TitleExpress Settlement System Printed 09.23.2005 at 14:52 SB

D. NAME OF BORROWER:   Monica Carroll and Robert Carroll

ADDRESS:

E. NAME OF SELLER:   N/A

ADDRESS:

F. NAME OF LENDER:   Fremont Investment & Loan

ADDRESS:   1401 Willow Pass Road, Ste. 50, Concord, CA 94520

G. PROPERTY ADDRESS:   3328 17th Street, NW, Washington, DC 20010

☐ Principal Residence   ☐ Other Real Estate

H. SETTLEMENT AGENT   Consumer First Title, LLC, Telephone: 301-345-6601 Fax: 301-345-3390

PLACE OF SETTLEMENT   6411 Ivy Lane, Suite 302, Greenbelt, MD 20770

I. SETTLEMENT DATE:   09/23/2005   DISBURSEMENT DATE:   09/28/2005

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 10,385.79 | 403. | |
| 104. Payoff 0000321972349 | 255,251.17 | 404. | |
| HomEq Servicing Corporation | | | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 266,636.96 | 420. GROSS AMOUNT DUE TO SELLER | |
| 200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loans | 288,230.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 288,230.00 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 266,636.96 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 288,230.00 | 602. Less reduction amount due seller (line 520) | |
| 303. CASH TO BORROWER | 21,593.04 | 603. CASH TO SELLER | 0.00 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on line 401 above constitutes the Gross Proceeds of this transaction.

You are required by law to provide the settlement agent your correct taxpayer identification number (Fed. Tax ID No: _____ ) with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

TIN: _____ _____ _____    SELLER(S) SIGNATURE(S): _____

SELLER(S) NEW MAILING ADDRESS: _____

SELLER(S) PHONE NUMBERS: _____ (H) _____ (W)

## SETTLEMENT STATEMENT

| L. SETTLEMENT CHARGES | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ % | | | | |
| Division of commission (line 700) as follows: | | | | |
| 701. $ | to | | | |
| 702. $ | to | | | |
| 703. Commission paid at Settlement | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | |
| 801. Loan Origination Fee | % Fremont Investment & Loan | LR | 489.00 | |
| 802. Loan Discount | % | | | |
| 803. Appraisal Fee | to Premier Mortgage Solutions | | 350.00 | |
| 804. Credit Report | to Premier Mortgage Solutions | | 50.00 | |
| 805. Underwriting Fee | to Fremont Investment & Loan | LR | 405.00 | |
| 806. Mortgage Application Fee | to Premier Mortgage Solutions | | 400.00 | |
| 807. Broker Fee | to Premier Mortgage Solutions | | 3,650.00 | |
| 808. Tax Service Fee | to LandAmerica Tax and Flood Services | LR | 60.00 | |
| 809. Flood Cert. | to LandAmerica Tax and Flood Services | LR | 9.50 | |
| 810. Processing Fee | to Premier Mortgage Solutions | | 500.00 | |
| 811. YSP paid by Fremont | to Premier Mortgage Solutions | $2,882.30 POC by Lender | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | |
| 901. Interest From  09/28/2005 to 10/01/2005   @$   75.0200 /day   3 Days | | LR | 225.06 | |
| 902. Mortgage Insurance Premium for   to | | | | |
| 903. Hazard Insurance Premium for   to Nationwide Mutual | | | 1,199.00 | |
| 904. | | | | |
| 905. | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | | | |
| 1001. Hazard Insurance | 2 mo. @$ 99.92 /mo. | LR | 199.84 | |
| 1002. Mortgage Insurance | mo. @$ /mo. | | | |
| 1003. City Property Tax | mo. @$ /mo. | | | |
| 1004. County Property Tax | 3 mo. @$ 214.58 /mo. | LR | 643.74 | |
| 1005. Annual Assessments | mo. @$ /mo. | | | |
| 1006. Aggregate Analysis Adjustment to Fremont Investment & Loan | | LR | -214.58 | 0.00 |
| **1100. TITLE CHARGES** | | | | |
| 1101. Settlement or closing fee | to Consumer First Title, LLC | | 175.00 | |
| 1102. Abstract or title search | to M&M Search | | 212.50 | |
| 1103. Title examination | to Consumer First Title, LLC | | 245.00 | |
| 1104. Title insurance binder | to Consumer First Title, LLC | | 75.00 | |
| 1105. Document Preparation | | | | |
| 1106. Notary Fees | | | | |
| 1107. Attorney's fees | | | | |
| (includes above items No: | | | | |
| 1108. Title Insurance | to Stewart Title/Consumer First | | 703.00 | |
| (includes above items No: | | | | |
| 1109. Lender's Policy | 288,230.00 - 703.00 | | | |
| 1110. Owner's Policy | | | | |
| 1111. Procurement/Overnight Payoff | to Consumer First Title, LLC | | 145.00 | |
| 1112. | | | | |
| 1113. | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | |
| 1201. Recording Fees Deed $ ; Mortgage $ 166.50 ; Release $ 33.50 | | | 200.00 | |
| 1202. City Transfer Tax | Deed $ ; Mortgage $ | | | |
| 1203. City Recordation Tax | Deed $ ; Mortgage $ | | | |
| 1204. Construction Tax | Deed $ ; Mortgage $ | | | |
| 1205. | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | |
| 1301. 2nd 1/2 Property Taxes | to D.C. Treasurer | | 643.73 | |
| 1302. Courier Fee | to Fremont Investment & Loan | LR | 20.00 | |
| **1400. TOTAL SETTLEMENT CHARGES**   (enter on lines 103, Section J and 502, Section K) | | | 10,385.79 | |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

*Monica Carroll*
Monica Carroll
577905580

*Robert C. Bonnel*
Robert C. Carroll
577360636

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18: U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

By _____   9/23/05
                           DATE



PLAINTIFF'S
EXHIBIT

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☑ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☑ Conventional ☐ Other (explain): | ☐ FHA ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number |
|---|---|---|---|---|

| Amount $ 290,000 | Interest Rate 9.550 % | No. of Months 360/360 | Amortization Type: | ☐ Fixed Rate ☐ GPM | ☑ Other (explain): ARM (type): 2/28 |
|---|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state, ZIP): 3328 17TH STREET, NW,  Washington, DC 20010   County: District Of Columbia | No. of Units 1

Legal Description of Subject Property (attach description if necessary)  SEE TITLE | Year Built

| Purpose of Loan | ☐ Purchase ☑ Refinance | ☐ Construction ☐ Construction-Permanent | ☐ Other (explain): | Property will be: ☑ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 1991 | Original Cost $ 92,000 | Amount Existing Liens $ 248,757 | Purpose of Refinance Cash-Out/Other | Describe Improvements ☐ made ☐ to be made  Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s)  MONICA S CARROLL  ROBERT CARROLL | Manner in which Title will be held Joint tenants | Estate will be held in: ☑ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)  Equity from Subject Property

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | MONICA S CARROLL | ROBERT CARROLL |

| Social Security Number 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 | Home Phone (incl. area code) 202-332-3609 | DOB (MM/DD/YYYY) 09/27/1962 | Yrs. School 16 | Social Security Number 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 | Home Phone (incl. area code) 202-332-3609 | DOB (MM/DD/YYYY) 08/13/1929 | Yrs. School 14 |
|---|---|---|---|---|---|---|---|

| ☐ Married ☑ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. / ages | ☐ Married ☑ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. / ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☑ Own ☐ Rent 13 No. Yrs.  3328 17TH STREET, NW Washington, DC 20010 | Present Address (street, city, state, ZIP) ☑ Own ☐ Rent 13 No. Yrs.  3328 17TH STREET, NW Washington, DC 20010 |
|---|---|
| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Name & Address of Employer ☐ Self Employed  FAMILY & CHILD CARE SERV. OF WASH DC 929 L STREET, N.W. Washington, DC 20001 | Yrs. on this job 6 yr(s)  Yrs. employed in this line of work/profession 6 | Name & Address of Employer ☐ Self Employed  RETIRED | Yrs. on this job  Yrs. employed in this line of work/profession |
|---|---|---|---|

| Position/Title/Type of Business ACTIVITY CO-ORDINATOR | Business Phone (incl. area code) 202-635-1900 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed  THE FITNESS EDGE INC. 1564 EAST LANCASTER AVENUE Paoli, PA 19301 | Dates (from-to) 2002 - PRESENT  Monthly Income $ 200.00 | Name & Address of Employer ☐ Self Employed | Dates (from-to)  Monthly Income $ |
|---|---|---|---|

| Position/Title/Type of Business FITNESS INSTRUCTOR | Business Phone (incl. area code) 202-739-6905 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer ☐ Self Employed  VICTORIA SECRET FOUR LIMITED PARKWAY Reynoldsburg, OH 43068 | Dates (from-to) 2002 - PRESENT  Monthly Income $ 150.00 | Name & Address of Employer ☐ Self Employed | Dates (from-to)  Monthly Income $ |
|---|---|---|---|

| Position/Title/Type of Business SALES ASSOCIATE | Business Phone (incl. area code) 202-293-7530 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

Borrower
Co-Borrower

Carr-Fremont00030

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 5,000.00 | $ | $ 5,000.00 | Rent | | |
| Overtime | | | | First Mortgage (P&I) | 2,275.00 | 2,449.06 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | INCL. | 80.00 |
| Dividends/Interest | | | | Real Estate Taxes | INCL. | 107.29 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | 466.00 | 1,386.25 | 1,851.25 | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 5,435.00 | $ 1,386.25 | $ 6,851.25 | Total | $ 2,275.00 | $ 2,636.35 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| B | FITNESS EDGE–JOB | $ 325.00 |
| B | THE HEALTH FITNESS CORPORATION | 140.00 |
| C | SOCIAL SECURITY/ DISABILITY INCOME | 1,386.25 |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed  ☑ Jointly  ☐ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| | | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| List checking and savings accounts below | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union WACHOVIA BANK | | HOMEQ PO BOX 13718 SACRAMENTO, CA 95863 | | |
| | | Acct. no. 6930321572349 | (2,199) | 248,273 |
| Acct. no. | $ 1,000 | Name and address of Company HSBC NV 1441 SCHILLING PLACE SALINAS, CA 93901 | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 550057332598 | 0 | 813 |
| Acct. no. | $ | Name and address of Company HSBC NV 1441 SCHILLING PL SALINAS, CA 93901 | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 548955005733 | 23 | 788 |
| Acct. no. | $ | Name and address of Company VERIZONLAND PO BOX 165018 COLUMBUS, OH 43216 | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 696263846 | 0 | 421 |
| Acct. no. | $ | Name and address of Company GC SERVICES 6330 GULFTON HOUSTON, TX 77081 | $ Payment/Months | $ |
| Stocks & Bonds (Company name/ number & description) | $ | | | |
| | | Acct. no. 86000000717220396 | 394 | 394 |
| | | Name and address of Company SST/COLUMBUS PO BOX 84024 COLUMBUS, GA 31906 | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ 100,000 | | Acct. no. 4036240000266308 | 15 | 374 |
| Subtotal Liquid Assets | $ 101,000 | Name and address of Company ASSET ACCEPT PO BOX 2036 WARREN, MI 48090 | $ Payment/Months | $ |
| Real estate owned (enter market value from schedule of real estate owned) | $ 650,000 | | | |
| Vested interest in retirement fund | $ 100,000 | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. 16565427 | 280 | 281 |
| Automobiles owned (make and year) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) HOUSEHOLD FURNITURE | $ 20,000 | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 778 | |
| Total Assets a. | $ 871,000 | Net Worth (a minus b) → $ 619,590 | Total Liabilities b. | $ 251,410 |

Freddie Mac Form 65   01/04
Calyx Form 1003 Loanapp2.frm 01/04

Page 2 of 4

Borrower _[signature]_
Co-Borrower _[signature]_

Fannie Mae Form 1003   01/04

Carr-Fremont00031

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 3328 17TH STRET, NW Washington, DC 20010 | SFR | $ 650,000 | $ 248,757 | $ | 2,275 | INCL. | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | | 650,000 | 248,757 | $ | 2,275 | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 256,221.32 |
| e. Estimated prepaid items | 1,559.85 |
| f. Estimated closing costs | 11,912.31 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 269,693.48 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 290,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 290,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -20,306.52 |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ | ☑ | ☐ | ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| j. Are you a U.S. citizen? | ☑ | ☐ | ☐ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | ☐ | ☐ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| (1) What type of property did you own-principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home-solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | O | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and/or assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature X | Date 7/12/05 | Co-Borrower's Signature X | Date 7/12/05 |
|---|---|---|---|

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information | | CO-BORROWER ☐ I do not wish to furnish this information | |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino   ☑ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino   ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☑ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☐ White | Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☐ White |
| Sex: | ☑ Female   ☐ Male | Sex: | ☐ Female   ☐ Male |

| To be Completed by Interviewer This application was taken by: ☐ Face-to-face interview ☐ Mail ☑ Telephone ☐ Internet | Interviewer's Name (print or type) FRANK OKEBUGWU | Name and Address of Interviewer's Employer |
|---|---|---|
| | Interviewer's Signature | PREMIER MORTGAGE SOLUTIONS |
| | Date | 9200 BASIL COURT, SUITE 100 |
| | Interviewer's Phone Number (incl. area code) 301-883-9810 | UPPER MARLBORO, MD 20774 (P) 301-883-9810 (F) 301-883-9948 |

Carr-Fremont00032

## Continuation Sheet/Residential Loan Application

| | | |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>MONICA S CARROLL | Agency Case Number: |
| | Co-Borrower:<br>ROBERT CARROLL | Lender Case Number: |

### VI. ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature:<br>X *Monica S Carroll* | Date<br>*7/22/05* | Co-Borrower's Signature<br>X *Robert Carroll* | Date<br>*5/23/05* |
|---|---|---|---|

PLAINTIFF'S
EXHIBIT

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☑ the income or assets of a person other than the "Borrower" ting the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan ation, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community ity state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☑ Conventional  ☐ Other (explain): <br> ☐ FHA  ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number |
|---|---|---|---|

| Amount <br> $ 288,230 | Interest Rate <br> 9.550 % | No. of Months <br> 360/360 | Amortization Type: | ☐ Fixed Rate  ☐ Other (explain): <br> ☐ GPM  ☑ ARM (type): 2/28 |
|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP) <br> 3328 17TH STREET, NW, Washington, DC 20010  County: District Of Columbia | No. of Units <br> 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) <br> SEE TITLE | Year Built |
|---|---|

| Purpose of Loan | ☐ Purchase  ☐ Construction <br> ☑ Refinance  ☐ Construction-Permanent | ☐ Other (explain): | Property will be: <br> ☑ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost <br> $ | Amount Existing Liens <br> $ | (a) Present Value of Lot <br> $ | (b) Cost of Improvements <br> $ | Total (a+b) <br> $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired <br> 1991 | Original Cost <br> $ 92,000 | Amount Existing Liens <br> $ 248,757 | Purpose of Refinance <br> Cash-Out/Other | Describe Improvements ☐ made  ☐ to be made <br> Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s) <br> MONICA S CARROLL <br> ROBERT CARROLL | Manner in which Title will be held <br> Joint tenants | Estate will be held in: <br> ☑ Fee Simple <br> ☐ Leasehold <br> (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) <br> Equity from Subject Property |
|---|

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) <br> MONICA S CARROLL | Co-Borrower's Name (include Jr. or Sr. if applicable) <br> ROBERT CARROLL |
| Social Security Number 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  Home Phone (incl. area code) 202-332-3609  DOB (MM/DD/YYYY) 09/27/1962  Yrs. School 16 | Social Security Number 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  Home Phone (incl. area code) 202-332-3609  DOB (MM/DD/YYYY) 08/13/1929  Yrs. School 14 |
| ☐ Married  ☑ Unmarried (include single, ☐ Separated     divorced, widowed)  Dependents (not listed by Co-Borrower) no.    ages | ☐ Married  ☑ Unmarried (include single, ☐ Separated     divorced, widowed)  Dependents (not listed by Borrower) no.    ages |
| [Prese]nt Address (street, city, state, ZIP)  ☑ Own ☐ Rent 13 No. Yrs. <br><br> .3328 17TH STRET, NW <br> Washington, DC 20010 | Present Address (street, city, state, ZIP)  ☑ Own ☐ Rent 13 No. Yrs. <br><br> 3328 17TH STREET,NW <br> Washington, DC 20010 |
| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent ____ No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent ____ No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Name & Address of Employer  ☐ Self Employed  Yrs. on this job 6 yr(s) <br> FAMILY & CHILD CARE SERV. OF WASH DC <br> 929 L STREET, N.W. <br> Washington, DC 20001  Yrs. employed in this line of work/profession 6 | Name & Address of Employer  ☐ Self Employed  Yrs. on this job <br> RETIRED  Yrs. employed in this line of work/profession |
| Position/Title/Type of Business <br> ACTIVITY CO-ORDINATOR | Business Phone (incl. area code) <br> 202-635-1900 | Position/Title/Type of Business | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  ☐ Self Employed <br> VICTORIA SECRET <br> FOUR LIMITED PARKWAY <br> Reynoldsburg, OH 43058 | Dates (from-to) <br> 2002 - PRESENT <br> Monthly Income <br> $ 465.00 | Name & Address of Employer  ☐ Self Employed | Dates (from-to) <br> Monthly Income <br> $ |
|---|---|---|---|
| Position/Title/Type of Business <br> SALES ASSOCIATE | Business Phone (incl. area code) <br> 202-293-7530 | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer  ☐ Self Employed | Dates (from-to) <br> Monthly Income <br> $ | Name & Address of Employer  ☐ Self Employed | Dates (from-to) <br> Monthly Income <br> $ |
|---|---|---|---|
| [Positi]on/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 5,000.00 | $ | $ 5,000.00 | Rent | $ | |
| -b | | | | First Mortgage (P&I) | 2,275.00 | $ 2,434.12 |
| -3 | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | INCL | 80.00 |
| Dividends/Interest | | | | Real Estate Taxes | INCL | 107.29 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | 465.00 | 1,386.25 | 1,851.25 | Homeowner Assn. Dues | | |
| Total | $ 5,465.00 | $ 1,386.25 | $ 6,851.25 | Total | $ 2,275.00 | 2,621.41 |

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the
Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | | Monthly Amount |
|---|---|---|---|
| C | SOCIAL SECURITY/ DISABILITY INCOME | | $ 1,386.25 |
| B | PART TIME EMPLOYMENT | | 465.00 |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☑ Jointly ☐ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by | $ | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| | | | $ Payment/Months | $ |
| *List checking and savings accounts below* | | Name and address of Company | | |
| Name and address of Bank, S&L, or Credit Union | | HOMEQ | | |
| WACHOVIA BANK | | PO BOX 13716 | | |
| | | SACRAMENTO, CA 95853 | | |
| | | Acct. no. 6930321572349 | * (2,199) | 246,029 |
| Acct. no. | $ 1,000 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | MIDLAND | | |
| | | 4310 E BROADWAY RD | | |
| | | PHOENIX, AZ 85040 | | |
| | | Acct. no. 8511410853 | * 895 | 895 |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | HSBC NV | | |
| | | 1441 SCHILLING PL | | |
| | | SALINAS, CA 93901 | | |
| | | Acct. no. 548955305733 | * 26 | 863 |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | SST/COLUMBUS | | |
| | | PO BOX 84024 | | |
| | | COLUMBUS, GA 31908 | | |
| | | Acct. no. 4036240000266306 | * 15 | 464 |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/ number & description) | $ | GC SERVICES | | |
| | | 6330 GULFTON | | |
| | | HOUSTON, TX 77081 | | |
| | | Acct. no. 8600000717220396 | * 394 | 394 |
| Life insurance net cash value | $ | Name and address of Company | $ Payment/Months | $ |
| Face amount: $ | 100,000 | VERIZON WASH | | |
| | | PO BOX 165018 | | |
| | | COLUMBUS, OH 43218 | | |
| Subtotal Liquid Assets | $ 101,000 | Acct. no. 896263846 | * 0 | 368 |
| Real estate owned (enter market value from schedule of real estate owned) | $ 650,000 | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ 100,000 | ASSET ACCEPT | | |
| | | PO BOX 2036 | | |
| Net worth of business(es) owned (attach financial statement) | $ | WARREN, MI 48090 | | |
| Automobiles owned (make and year) | $ | Acct. no. 16565427 | * 283 | 283 |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (Itemize) | $ | | | |
| HOUSEHOLD FURNITURE | 20,000 | Job Related Expense (child care, union dues, etc.) | $ | |
| | | | | |
| | | Total Monthly Payments | | |
| Total Assets a. | $ 871,000 | Net Worth (a minus b) ⟹ $ 619,640 | Total Liabilities b. | $ 251,360 |

Freddie Mac Form 65   01/04
Calyx Form 1003 Loanapp2.frm 01/04

Borrower

Co-Borrower

Page 2 of 4

Fannie Mae Form 1003   01/04

SEP-23-2005 FRI 02:37 PM premier mortgage solutio    FAX NO. 3018832184    P. 04

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 17TH STREET, NW shington, DC 20010 | SFR | $ 650,000 | $ 248,757 | $ | $ 2,275 | $ INCL | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | | $ 650,000 | $ 248,757 | $ | $ 2,275 | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 251,360.00 |
| e. Estimated prepaid items | 1,728.35 |
| f. Estimated closing costs | 9,090.11 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 262,178.46 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 288,230.00 |
| PMI, MIP, Funding Fee financed | |
| loan amount (add m & n) | 288,230.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -26,051.54 |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ | ☑ | ☐ | ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| j. Are you a U. S. citizen? | ☑ | ☐ | ☐ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | ☐ | ☐ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 9/23/05 | X | 9/23/05 |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino  ☑ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino  ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native  ☐ Asian  ☑ Black or African American | Race: | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander  ☐ White | | ☐ Native Hawaiian or Other Pacific Islander  ☐ White |
| Sex: | ☑ Female  ☐ Male | Sex: | ☐ Female  ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: ☐ Face-to-face interview ☐ Mail ☐ Telephone ☐ Internet | FRANK OKEBUGWU | PREMIER MORTGAGE SOLUTIONS 9200 BASIL COURT, SUITE 109 UPPER MARLBORO, MD 20774 (P) 301-883-8810 (F) 301-883-4513 |
| | Interviewer's Signature          Date 9/23/05 | |
| | Interviewer's Phone Number (incl. area code) 301-883-8810 | |

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>MONICA S CARROLL | Agency Case Number: |
|---|---|---|
| | Co-Borrower:<br>ROBERT CARROLL | Lender Case Number: |

### VI. ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>PARK DANSAN | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 3104186616 | 66 | 66 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X *[signature]* | 9/23/05 | X *[signature]* | 9/23/05 |

Freddie Mac Form 65 / 01/04<br>CALYX Form 1003 Lnap4ast.frm 01/04

Fannie Mae Form 1003 / 01/04



| | | | | |
|---|---|---|---|---|
| Print Date: 9/23/05 | STATUS: APPROVED | | DATE: 9/6/05 | |
| BORROWER: MONICA S CARROLL | | | APPLICATION # | 927000166086 |
| PROPERTY | 3328 17TH ST NW, | | | |
| ADDDRESS | WASHINGTON, DC 20010 | | LOAN PURPOSE | REFINANCE 1-4 UNITS |

LOAN TYPE:   WHOLESLE
PROGRAM:     CXP 2/28 STATED INCOME 30/30 1ST
QUALIFY PMT: $      2,424.00
START RATE PMT: $   2,423.60
LOAN AMOUNT:  $    288,230.00
OCCUPANCY TYPE:   OWNER OCCUPIED
BROKER:   PREMIER MORTGAGE SOLUTIONS SERVICES INC

REFINANCE TYPE    CASH-OUT MISC
PROPERTY TYPE     1 FAMILY

PREPAYMENT PENALTY   2-YEAR
WINDOW               NO
BROKER STATUS        APPROVED
BROKER TYPE          BROKER

## RATE DETAILS

| | | | | |
|---|---|---|---|---|
| Base Rate: | 9.2500 | FIL 2nd TD | 0.0000 | |
| | | Interest Only | | |
| Rate Add-On's: | | YSP Adjustment | 0.5000 | |
| Program | | Fee Buyout | 0.0000 | |
| Property | | BK Option | | |
| Occupancy | 0.0000 | Total Add-On's | 0.5000 | |
| Doc Type | 0.0000 | | | |
| Prepayment | 0.0000 | | | |
| Loan Amount | | | | |
| 40/30 Option | | | | |

|  | | MARGIN | | YSP/DISCOUNT | |
|---|---|---|---|---|---|
| Base Rate: | 9.2500 | Margin: | 6.9900 | Points: | -1 |
| Final Rate: | 9.7500 | Override: | 6.2900 | Override: | |
| Override: | 9.5000 | Variance: | 0.7000 | Variance: | |
| Variance: | 0.2500 | | | | |

| 1ST CHG CAP: | 2.0000 | REGULAR CHG CAP: | 1.5000 | CEILING: | 15.5000 | FLOOR: | 9.5000 |
|---|---|---|---|---|---|---|---|

| PROPERTY INFORMATION | | INCOME INFORMATION | |
|---|---|---|---|
| Purchase Price $ | | TOTAL INCOME | 6,851.00 |
| Estimated Value $ | | | |
| Appraised Value $ | 703,000.00 | TOTAL DEBT | 2,772.00 |
| Appraisal Date | 8/13/05 | | |
| FIL Review Value $ | 703,000.00 | DEBT RATIO | 40.461 |
| Loan-To-Value (LTV) % | 41.000 | | |
| Combined LTV (CLTV) % | 41.000 | | |

## PROPERTY

SFR 6 ROOMS 3 BEDR 1 BATH AVER COND COMPS W/IN .42 MI DATES OF SALES
W/IN 5 MOS

## INCOME

ON PRIM JOB 6 YRS $5K/MO STATED FROM 1003 1 ADDTL JOB SINCE 2004 FOR
$465/MO STATED FROM 1003 CO-BORR SOC SEC/DISAB $1386/MO PER 1003

## DEBT

REMAINING CONSUMER DEBT $93/MO

## CREDIT

526 SCORE MTG MAX 90 DAYS LATE CXP

## ASSETS

REFI

## UNDERWRITER RECOMMENDATIONS

CXP 2/28 STATED REFI 41% LTV SFR AVER COND FMV SUPP BY COMPS BORRS IN
HOME 13 YRS MTG 90 DAYS DELINQ PAST 12 MOS 526 SCORE BORR ON PRIM JOB
6 YRS HAS 2 OTHER JOBS SINCE 2002 CO-BORR ON SOC SEC NOT ALL INCOME
NEEDED TO QUALIFY
PRIMARY BORR NOT ON HOMEQ MTG DEFAULTING TO WORST CASE MTG RATING OR
NO MTG/RENT HIST CXP

EXCEPTION:

LOAN BENEFIT:  APPROX $34K C/O

| LOAN REP. | THOMAS GOEHRING | MANAGER | |
|---|---|---|---|
| UNDERWRITER | NATHALIE LEMAIRE | SENIOR MANAGER | |

ITUNDAPP  cl 06/30/05                    PAGE 1 OF 3

FREMONT INVESTMENT & LOAN GUIDELINE COMPARISON

| Borrower: | MONICA S CARROLL | Broker: | PREMIER MORTGAGE SOLUTIONS SERVICES INC |
|---|---|---|---|

| Print Date: | 9/23/05 | Date: | 9/6/05 |
|---|---|---|---|

| As Submitted | As Approved |
|---|---|
| PROGRAM:<br>2/28 | PROGRAM:<br>CXP 2/28 STATED INCOME 30/30 1ST |
| PROPERTY TYPE: 1 FAMILY | PROPERTY TYPE: 1 FAMILY |
| LOAN AMOUNT: $ 288,230.00 | LOAN AMOUNT: $ 288,230.00 |
| LOAN PURPOSE: REFINANCE 1-4 UNITS | LOAN PURPOSE: REFINANCE 1-4 UNITS |
| RATE: 9.550 | RATE: 9.500 |
| MARGIN: 6.990 | MARGIN: 6.2900 |
| POINTS: 1.000 | POINTS: -1.000 |

Trade Opened: 1/1/92

| GUIDELINE ITEM | GUIDELINE MAXIMUM | | | ACTUAL | | |
|---|---|---|---|---|---|---|
| LOAN TO VALUE (LTV) % | | 70.000 % | | | 41.000 % | |
| DEBT RATIO % | | 55.000 % | | | 40.461 % | |
| CLTV % | | 95 % | | | 41.000 % | |
| CREDIT ANALYSIS | 30X | 60X | 90+X | 30X | 60X | 90+X |
| MORTGAGE LATES 12MO | 99 | 99 | 1 | | | 1 |
| MORTGAGE LATES 24MO | 99 | 99 | 99 | | | |
| INSTALLMENT CREDIT 12MO | 0 | 0 | 0 | | | |
| INSTALLMENT CREDIT 24MO | 0 | 0 | 0 | | | |
| REVOLVING CREDIT 12MO | 0 | 0 | 0 | | | |
| REVOLVING CREDIT 24MO | 0 | 0 | 0 | | | |
| COLLECTION/ CO 12MO $ | $ | | | $ | | |
| COLLECTION/ CO 24MO $ | $ | | | $ | | |
| YEARS SINCE LAST BK | 1 | YEARS | | | YEARS | |
| YEARS SINCE NOD FILED | 1 | YEARS | | | YEARS | |

Credit Scores Provided by: FIL

| **EFX:** 472<br>(Equifax) | **XPN:** 531<br>(Experian) | **TUC:** 526<br>(TransUnion) |
|---|---|---|

## Details of Transaction

| | | | | |
|---|---|---|---|---|
| Purchase Price: | $ | | | |
| Alterations / Repairs: | $ | | | |
| Land, if Separate: | $ | | | |
| Refinance (1st): | $ 248,273.00 | Concurrent 1st / 2nd TD | $ | |
| Other Liens: | $ | Subordinate Financing: | $ | |
| Debts Paid: | $ | Closing Costs by Seller: | $ | |
| Estimated Prepaids: | $ 6,183.50 | Other Credits (app fee): | $ | |
| Estimated Closing Costs: | $ 400.00 | Other Credits (earnest $): | $ | |
| TOTAL COSTS: | $ 254,856.50 | LOAN AMOUNT: | $288,230.00 | |

CASH FROM / TO BORROWER: $ -33,373.50

FREMONT
INVESTMENT & LOAN

IT2UNAPP  REV 04/24/02                    PAGE 2 OF 3

CARROLL                                                                    9   0166086

## Income Calculations

### Borrower Income

**Pay-Stub Information**

|  |  | This Period | Year-to-Date |
|---|---|---|---|
| Pay Period: | Regular Wages: |  |  |
| Period Ending: | Other Wages: |  |  |
| Job Start Date: | Total: |  |  |

**Calculated Monthly Income Amounts**

| Regular Wages: | This Stub |  | Using YTD $ |  |
|---|---|---|---|---|
| Other Wages: |  |  |  |  |
|  | Total: |  | Total: |  |

**Calculated Income Using W-2 Amounts**

| W-2 Income |  | W-2 Monthly Income: |
|---|---|---|
|  | Plus 1 | YTD Average Monthly Income: |

**Bank Statement Income**

Using Net Bank Statement Amounts          Bank Statement Type:

| Stmt.# | Amount | Stmt.# | Amount | Stmt.# | Amount |
|---|---|---|---|---|---|
| 1. |  | 9. |  | 17. |  |
| 2. |  | 10. |  | 18. |  |
| 3. |  | 11. |  | 19. |  |
| 4. |  | 12. |  | 20. |  |
| 5. |  | 13. |  | 21. |  |
| 6. |  | 14. |  | 22. |  |
| 7. |  | 15. |  | 23. |  |
| 8. |  | 16. |  | 24. |  |

Ownership Percentage:

Statement Date:

Avg. Monthly Income:

**Schedule-C Income**                                                    Total:

| TAX YEAR: | Total: | TAX YEAR: |  |
|---|---|---|---|
| Net Profit/Loss (Line 31): |  | Net Profit/Loss (Line 31): | 12 Mo Avg: |
| Depletion (Line 12): | 12 Mo Avg: | Depletion (Line 12): |  |
| Depreciation (Line 13): |  | Depreciation (Line 13): | 24 Mo Avg |
| Other Add-Back: |  | Other Add-Back: | N/A |

Borrower Qualifying Income:        5,000.00    Total Borrower Income:    5,465.00

### Co-Borrower Income

**Pay-Stub Information**

|  |  | This Period | Year-to-Date |
|---|---|---|---|
| Pay Period: | Regular Wages: |  |  |
| Period Ending: | Other Wages: |  |  |
| Job Start Date: | Total: |  |  |

**Calculated Monthly Income Amounts**

| Regular Wages: | This Stub |  | Using YTD $ |  |
|---|---|---|---|---|
| Other Wages: |  |  |  |  |
|  | Total: |  | Total: |  |

**Calculated Income Using W-2 Amounts**

| W-2 Income |  | W-2 Monthly Income: |
|---|---|---|
|  | Plus 1 | YTD Average Monthly Income: |

**Bank Statement Income**

Using Net Bank Statement Amounts          Bank Statement Type:

| Stmt.# | Amount | Stmt.# | Amount | Stmt.# | Amount |
|---|---|---|---|---|---|
| 1. |  | 9. |  | 17. |  |
| 2. |  | 10. |  | 18. |  |
| 3. |  | 11. |  | 19. |  |
| 4. |  | 12. |  | 20. |  |
| 5. |  | 13. |  | 21. |  |
| 6. |  | 14. |  | 22. |  |
| 7. |  | 15. |  | 23. |  |
| 8. |  | 16. |  | 24. |  |

Ownership Percentage:

Statement Date:

Avg. Monthly Income:

**Schedule-C Income**                                                    Total:

| TAX YEAR: | Total: | TAX YEAR: |  |
|---|---|---|---|
| Net Profit/Loss (Line 31): |  | Net Profit/Loss (Line 31): | 12 Mo Avg: |
| Depletion (Line 12): | 12 Mo Avg: | Depletion (Line 12): |  |
| Depreciation (Line 13): |  | Depreciation (Line 13): | 24 Mo Avg |
| Other Add-Back: |  | Other Add-Back: | N/A |

Co-Borrower Qualifying Income:              Total Co-Borrower Income:    1,386.00

**Income Comments:**

ON PRIM JOB 6 YRS $5K/MO STATED FROM 1003 1 ADDTL JOB SINCE 2004 FOR
$465/MO STATED FROM 1003 CO-BORR SOC SEC/DISAB $1386/MO PER 1003

## TOTAL Qualifying Income:        6,851.00

INC-SUMA  01/24/05

PLAINTIFF'S
EXHIBIT

8



## MORTG. .E BROKERAGE BUSINESS CON .ACT

MONICA S CARROLL and ROBERT CARROLL

(hereinafter called Borrower), employs                    PREMIER MORTGAGE SOLUTIONS
(hereinafter called Business) to obtain a mortgage loan commitment (hereinafter called Commitment) within          days from
the date hereof and acknowledges that Business cannot make loans or commitments or guarantee acceptance into specific programs,
terms or conditions of any loan. However, Business may issue a rate lock-in or commitment on behalf of a lender to the Borrower.

### I. PROPERTY:
Address:   3328 17TH STREET, NW
             Washington, DC 20010
Borrower's estimates of fair market value: $
Borrower's estimates of the balances on any existing mortgage loan: $

### II. TERMS OF LOAN APPLICATION:
Loan Amount: $      290,000          Interest Rate:   7.400   %          Loan Term/Due In:   480 months / 360 months
Monthly Payment: $      1,887.01
Loan Type:   [✓] First Mortgage       [ ] Second/Junior Mortgage

### III. MORTGAGE BROKERAGE FEE
Business, in consideration of the Borrower's agreement to pay a mortgage brokerage fee along with actual costs incurred in connection
with this loan, agrees to exert its best efforts to obtain a bona fide mortgage loan commitment in accordance with the terms (or better
terms) and conditions set forth herein. The Business and its associates or employees shall be held harmless from any liability resulting
from failure to obtain said loan commitment. Borrower hereby agrees to pay the actual costs as estimated herein and Borrower
agrees to pay Business a mortgage brokerage fee of $                 for obtaining the commitment. Additionally, Borrower
acknowledges that Business may receive additional compensation from Lender based on the mortgage program and terms Borrower has
engaged Business to obtain in securing the commitment and that Business will receive a sum in range of          % to          %
of the total loan amount. This additional compensation, the exact amount of which will be disclosed at the time of closing, is part of
the total brokerage fee due Business. In no event will the brokerage fee, additional compensation included, exceed the maximum fee
permitted by the applicable state law.

### IV. APPLICATION FEE
An application fee is charged for the initial cost of processing, verifying and preparing your loan package to submit to a lender for
commitment, and will be credited against the amount the Borrower owes if closing occurs. This fee is [✓] Refundable [ ] Non-
refundable [ ] Applicable to your closing costs at the time of the settlement of your loan. Business acknowledges the receipt of
$                as an Application Fee.

### V. DEPOSIT
Business acknowledge the deposit of $                will be used toward the costs incurred by the Business, or by third party, on
behalf of Borrower, to pay expenses necessary to secure the mortgage loan commitment. Actual costs incurred by the Business for
items listed on Good Faith Estimate are non-refundable, even if the mortgage loan commitment is not received. In the event of
default by the Borrower, Business is authorized to immediately disburse from the deposit all sums then due Business or any third party.
The disbursement is not a waiver of any other sums due Business by Borrower, as more fully enumerated herein. Money retained by
Business as the deposit shall be returned to the Borrower, within 60 days of disposition of the loan, in accordance with the following:
   (a) the services for which the money is expended are not performed.
   (b) the services for which the money is expended are performed, but there is an excess amount that would be paid as
       brokerage fee but this commitment is not obtained.

### VI. SERVICES TO BE PROVIDED BY MORTGAGE BROKERAGE BUSINESS
In consideration for Business earning its fee, the services to be provided by Business are: assembling information, compiling files and
completing credit application for borrower(s), processing the application file including verifying of information received and
ordering vendor reports, preparing and submitting the completed file for conditional loan commitment between borrower(s) and lender,
and any incidental services necessary to obtain commitment including courier, express mail, photographs, and telephone toll charges.

Applicant  MONICA S CARROLL          7/22/05          PREMIER MORTGAGE SOLUTIONS
                                      Date             Mortgage Brokerage Business          License #

Applicant  ROBERT CARROLL            Date      By  FRANK OKEBUKWU          7-22-05
                                                                           Date

Calyx Form - mbbc.frm (11/98)                Page 1 of 2

Carr-Fremont00051



# Request for Verification of Employment

**Privacy Act Notice:** This information is to be used by the agency collecting it or its assignees in determining whether you qualify as a prospective mortgagor under its program. It will not be disclosed outside the agency except as required and permitted by law. You do not have to provide this information, but if you do not your application for approval as a prospective mortgagor or borrower may be delayed or rejected. The information requested in this form is authorized by Title 38, USC, Chapter 37 (if VA); by 12 USC, Section 1701 et seq., (if HUD/FHA); by 42 USC, Section 1452b (if HUD/CPD); and Title 42 USC, 1471 et.seq. or 7 USC, 1921 et.seq. (if USDA/FmHA).

**Instructions:**   Lender - Complete Items 1 through 7. Have applicant(s) complete Item 8. Forward directly to employer named in Item 1.
   Employer - Please complete either Part II or Part III as applicable. Complete Part IV and return directly to lender named in Item 2.
   The form is to be transmitted directly to the lender and is not to be transmitted through the applicant or any other party.

## Part I - Request

| 1. To (Name and address of employer) | 2. From (Name and address of lender) |
|---|---|
| FAMILY & CHILD CARE SERVICE OF WASHINGTON DC 929 L STREET NW WASHINGTON, DC 20001 | FREMONT INVESTMENT & LOAN 1065 N. PACIFICENTER DRIVE ANAHEIM, CA 92806 (800) 927-5626 |

Contact: **NOLIA MELTON**    Phone #: **202-289-1510**

I certify that this verification has been sent directly to the employer and has not passed through the hands of the applicant or any other interested party.

| 3. Signature of Lender | 4. Title | 5. Date | 6. Lender's Number (Optional) |
|---|---|---|---|
| | | | 927000166086 |

I have applied for a mortgage loan and stated that I am now or was formerly employed by you. My signature below authorizes verification of this information.

| 7. Name and Address of Applicant (include employee or badge number) | 8. Signature of Applicant |
|---|---|
| MONICA S CARROLL     SSN 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 3328 17TH STREET NW WASHINGTON, DC 20010 | (See Attached Authorization) |

## Part II - Verification of Present Employment

| 9. Applicant's Date of Employment | 10. Present Position | 11. Probability of Continued Employment |
|---|---|---|

**12A.** Current Gross Base Pay (Enter Amount and Check Period)

$ _____
☐ Annual   ☐ Hourly
☐ Monthly   ☐ Other (Specify)
☐ Weekly

| 13. For Military Personnel Only | | 14. If Overtime or Bonus is Applicable, is its Continuance Likely?   Overtime ☐ Yes ☐ No   Bonus ☐ Yes ☐ No |
|---|---|---|
| Pay Grade | | |
| Type | Monthly Amount | |

**12B.** Gross Earnings

| Type | Year to Date | Past Year | Past Year | | |
|---|---|---|---|---|---|
| | | | | Base Pay | $ |
| Base Pay | $ | $ | $ | Rations | $ |
| Overtime | $ | $ | $ | Flight or Hazard | $ |
| Commissions | $ | $ | $ | Clothing | $ |
| | | | | Quarters | $ |
| Bonus | $ | $ | $ | Pro Pay | $ |
| | | | | Overseas or Combat | $ |
| Total | $ | $ | $ | Variable Housing Allowance | $ |

15. If paid hourly - average hours per week

16. Date of applicant's next pay increase

17. Projected amount of next pay increase

18. Date of applicant's last pay increase

19. Amount of last pay increase

## Part IV - Authorized Signature

Federal Statutes provide severe penalties for any fraud, intentional misrepresentation, or criminal connivance or conspiracy purposed to influence the issuance of any guaranty or insurance by the VA Secretary, the U.S.D.A., FmHA/FHA Commissioner, or the HUD/CPD Assistance Secretary.

| 26. Signature of Employer | 27. Title (Please print or type) | 28. Date |
|---|---|---|
| 29. Please print or type name signed in item 26. | 30. Phone No. | |

## FINAL VERIFICATION OF EMPLOYMENT

Date: **9/23/05**     Phone: **202-289-1510**

Contact: **NOLIA MELTON**

Presently employed? ☒ Yes  ☐ No          Self-employed? ☐ Yes  ☒ No

### TELEPHONE VERIFICATION ONLY, DO NOT MAIL.

Comments: **2ND JOB FOR CO-BWR W/VICTORIA'S SECRET AS A SALES ASSOCIATE FOR 1YR.**

**SEE THE WORK NUMBER VOE FOR PREVIOUS JOB HIST. ON 2ND JOB.**

Verified By: **MARITZA DIAZ**

ITVOE REVISED 05/04/98



PLAINTIFF'S
EXHIBIT

# Request for Verification of Employment


**FREMONT**
INVESTMENT&LOAN

**Privacy Act Notice:** This information is to be used by the agency collecting it or its assignees in determining whether you qualify as a prospective mortgagor under its program. It will not be disclosed outside the agency except as required and permitted by law. You do not have to provide this information, but if you do not your application for approval as a prospective mortgagor or borrower may be delayed or rejected. The information requested in this form is authorized by Title 38, USC, Chapter 37 (if VA); by 12 USC, Section 1701 et.seq., (if HUD/FHA); by 42 USC, Section 1452b (if HUD/CPD); and Title 42 USC, 1471 et.seq. or 7 USC, 1921 et.seq. (if USDA/FmHA).

**Instructions:**  Lender - Complete Items 1 through 7. Have applicant(s) complete Item 8. Forward directly to employer named in Item 1.
Employer - Please complete either Part II or Part III as applicable. Complete Part IV and return directly to lender named in Item 2.
The form is to be transmitted directly to the lender and is not to be transmitted through the applicant or any other party.

## Part I - Request

| 1. To (Name and address of employer) | 2. From (Name and address of lender) |
|---|---|
| **FAMILY & CHILD CARE SERVICE OF WASHINGTON DC**<br>**929 L STREET NW**<br>**WASHINGTON, DC 20001**<br><br>Contact: **NOLIA MELTON**        Phone #: **202-289-1510** | **FREMONT INVESTMENT & LOAN**<br>**1065 N. PACIFICENTER DRIVE**<br>**ANAHEIM, CA 92806**<br>**(800) 927-5626** |

I certify that this verification has been sent directly to the employer and has not passed through the hands of the applicant or any other interested party.

| 3. Signature of Lender | 4. Title | 5. Date | 6. Lender's Number (Optional)<br>**927000166086** |
|---|---|---|---|

I have applied for a mortgage loan and stated that I am now or was formerly employed by you. My signature below authorizes verification of this information.

| 7. Name and Address of Applicant (include employee or badge number) | 8. Signature of Applicant |
|---|---|
| **MONICA S CARROLL**        SSN **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**<br>**3328 17TH STREET NW**<br>**WASHINGTON, DC 20010** | **(See Attached Authorization)** |

## Part II - Verification of Present Employment

| 9. Applicant's Date of Employment | 10. Present Position | 11. Probability of Continued Employment |
|---|---|---|

| 12A. Current Gross Base Pay (Enter Amount and Check Period) | | 13. For Military Personnel Only | | 14. If Overtime or Bonus is Applicable, Is Its Continuance Likely?   Overtime ☐ Yes ☐ No   Bonus ☐ Yes ☐ No |
|---|---|---|---|---|
| $ | ☐ Annual    ☐ Hourly<br>☐ Monthly   ☐ Other (Specify)<br>☐ Weekly | Pay Grade | | |

| 12B. Gross Earnings | | | | 13. Type | Monthly Amount | 15. If paid hourly - average hours per week |
|---|---|---|---|---|---|---|
| Type | Year to Date | Past Year | Past Year | Base Pay | $ | |
| Base Pay | $ | $ | $ | Rations | $ | 16. Date of applicant's next pay increase |
| Overtime | $ | $ | $ | Flight or Hazard | $ | 17. Projected amount of next pay increase |
| Commissions | $ | $ | $ | Clothing | $ | |
| | | | | Quarters | $ | |
| | | | | Pro Pay | $ | 18. Date of applicant's last pay increase |
| Bonus | $ | $ | $ | Overseas or Combat | $ | |
| Total | $ | $ | $ | Variable Housing Allowance | $ | 19. Amount of last pay increase |

## Part IV - Authorized Signature - Federal Statutes provide severe penalties for any fraud, intentional misrepresentation, or criminal connivance or conspiracy purposed to influence the issuance of any guaranty or insurance by the VA Secretary, the U.S.D.A., FmHA/FHA Commissioner, or the HUD/CPD Assistance Secretary.

| 26. Signature of Employer | 27. Title (Please print or type) | 28. Date |
|---|---|---|
| 29. Please print or type name signed in item 26. | 30. Phone No. | |

## FINAL VERIFICATION OF EMPLOYMENT

| Date: **9/23/05** | Phone: **202-289-1510** |
|---|---|

Contact: **NOLIA MELTON**

| Presently employed? ☒ Yes ☐ No | Self-employed? ☐ Yes ☒ No |
|---|---|

### TELEPHONE VERIFICATION ONLY, DO NOT MAIL.

Comments: **2ND JOB FOR CO-BWR W/VICTORIA'S SECRET AS A SALES ASSOCIATE FOR 1YR.**

**SEE THE WORK NUMBER VOE FOR PREVIOUS JOB HIST. ON 2ND JOB.**

Verified By: **MARITZA DIAZ**

ITVOE  REVISED 05/04/98

**PLAINTIFF'S EXHIBIT**

tabbies

_/o_

Return To:
FREMONT INVESTMENT & LOAN
P.O. BOX 34078
FULLERTON, CA 92834-34078

*Consumer First Title*
*6411 Ivy Lane #302*
*Greenbelt, Md 20770*
*File # CF05-526*
*Sq 2612 Lot 663*

Certified True Copy

————————————————— [Space Above This Line For Recording Data] —————————————————

# DEED OF TRUST

*Refinance*  MIN 1001944-7000166086-8

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **September 23, 2005**
together with all Riders to this document.

(B) "Borrower" is **MONICA CARROLL AND ROBERT CARROLL** and ANNETTE CARROLL

Borrower's address is **3328 17TH ST NW,**
**WASHINGTON, DC 20010**                          . Borrower is the trustor under this Security Instrument.

(C) "Lender" is **FREMONT INVESTMENT & LOAN**

Lender is a **CORPORATION**
organized and existing under the laws of **CALIFORNIA**
Lender's address is
**2727 E IMPERIAL HIGHWAY, BREA CA 92821**

(D) "Trustee" is  **CONSUMER FIRST TITLE**

Trustee's address is
**6411 IVY LANE STE 302**
**GREENBELT, MD 20770**

DISTRICT OF COLUMBIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP-6A(DC) (0205)        Form 3009 1/01
                         (rev. 5/02)
Page 1 of 15        Initials:

VMP MORTGAGE FORMS - (800)521-7291

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **September 23, 2005**
The Note states that Borrower owes Lender **Two Hundred Eighty-Eight Thousand, Two Hundred Thirty and No/100 ------------------------** Dollars
(U.S. $    **288,230.00**    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **October 1, 2035**.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: [signature]

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the District of Columbia:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF

Parcel ID Number: 2612/0663                              which currently has the address of
3328 17TH ST NW                                                              [Street]
Washington, District of Columbia 20010      [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials: _____

-6A(DC) (0205)                    Page 3 of 15                    Form 3009 1/01 (rev. 5/02)

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all

Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien

proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien

Initials:

which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance

Initials: [signature]

-6A(DC) (0205)                     Page 6 of 15                     Form 3009 1/01 (rev. 5/02)

which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6A(DC) (0205)                    Page 9 of 15                    Initials: _____                    Form 3009 1/01 (rev. 5/02)

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable Law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

Initials:

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6A(DC) (0205)                    Page 12 of 15                    Initials: _____    Form 3009 1/01 (rev. 5/02)

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall send written notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall give notice of sale by public advertisement as Trustee deems proper to protect the interests of Borrower and Lender. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of _____ % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by recording a Deed of Appointment. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

VMP-6A(DC) (0205)                Page 13 of 15                Initials: _____        Form 3009 1/01 (rev. 5/02)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
                          -Borrower

_____ (Seal)
MONICA CARROLL            -Borrower

_____ (Address)

_____ (Seal)
ROBERT CARROLL            -Borrower

_____ (Address)

_____ (Seal)
ANNETTE CARROLL           -Borrower

_____ (Address)

_____ (Address)

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Address)

_____ (Address)

_____ (Seal)
                          -Borrower

_____ (Seal)
                          Borrower

_____ (Address)

_____ (Address)

-6A(DC) (0205)                    Page 14 of 15                    Form 3009 1/01 (rev. 5/02)

*State of Maryland*
*County of Prince George*

**DISTRICT OF COLUMBIA, ss:**

I, *LeAnn Evans*, a Notary Public in and for the District of Columbia, do hereby certify that

*Monica Carroll, Robert Carroll and Annette Carroll*

personally known to me as the person(s) who executed the foregoing instrument bearing date of *23rd* day of *Sept 2005*, personally appeared before me in said District and acknowledged said instrument to be his/her/their act and deed, and that he/she/they executed said instrument for the purposes therein contained.

Witness my hand and official seal this *23rd* day of *Sept 2005*

*LeAnn Evans* (Seal)

Notary Public, D.C.

LeAnn Evans
Notary Public
Charles County, Maryland
Commission Expires September 1, 2007

-6A(DC) (0205)                    Page 15 of 15                    Initials: _____    Form 3009 1/01 (rev. 5/02)

Exhibit A

Lot 663 in Square 2612 in a subdivision made by Chapin Brown, as per plat recorded in
Liber no. 47 at folio 133 among the records of the Office of the Surveyor for the District
of Columbia

PLAINTIFF'S
EXHIBIT

_11_

## ESTIMATED PAYMENT LETTER

September 23, 2005

MONICA CARROLL
3328 17TH ST NW.
WASHINGTON, DC 20010

Dear Mortgagor:

We wish to extend our congratulations on your new loan.

The first regular monthly payment on your loan is due     November 1, 2005.

Based on the preliminary information now available for the amount of taxes and insurance, the ESTIMATE of your monthly payments is as follows:

| | | |
|---|---|---|
| Principal & Interest | $ | 2,423.60 |
| Property Taxes | | 214.58 |
| Hazard Insurance | | 99.92 |
| Flood Insurance | | |
| Mortgage Insurance | | |
| TOTAL PAYMENT | $ | 2,738.10 |

Soon after your loan closes you will begin receiving a monthly notice to remit with your check. The amount of your monthly payment may differ from the estimate shown above, depending on the latest estimate of the amount for taxes and insurance.

Sincerely,

FREMONT INVESTMENT & LOAN

RECEIVED & ACKNOWLEDGED:

_____ 9/23/05      _____ 9/25/05
Borrower MONICA CARROLL    Date      Borrower ROBERT CARROLL    Date

_____       _____
Borrower       Date        Borrower       Date

IT ESTPAY REV 05/07/03                          FREMONT INVESTMENT&LOAN   Carr-Fremont00070



PLAINTIFF'S
EXHIBIT
12

| | | | | |
|---|---|---|---|---|
| Lender: | **FREMONT INVESTMENT & LOAN** | | Applicant(s) | **MONICA CARROLL** |
| | | | | **ROBERT CARROLL** |
| Address | **2727 E IMPERIAL HIGHWAY** | | | |
| | **BREA, CA 92821** | | | |
| Date | **September 23, 2005** | Property Address | **3328 17TH ST NW,** | |
| Application Number | **927000166086** | | **WASHINGTON, DC 20010** | |
| | | Mailing Address | **3328 17TH STREET NW** | |
| | | | **WASHINGTON, DC 20010** | |

## ITEMIZATION OF AMOUNT FINANCED

| Ref HUD-1 Statement | | | | | |
|---|---|---|---|---|---|
| | Amount paid on your account: | | | | |
| 1000's | Hazard Insurance Premium Reserves | 2 mo @$ 99.92 | $ | | 199.84 |
| 1000's | Flood Insurance Premium Reserves | mo @$ | $ | | |
| 1000's | Tax & Assessment Reserves | 3 mo @$ 214.58 | $ | | 643.74 |
| | Amount paid to others on your behalf: | | PAID | | DUE |
| 800's | Appraisal Fees to Appraiser | | | | 350.00 |
| 800's | | | | | |
| 800's | | | | | |
| 900's | Hazard Insurance Premiums to Insurance Agency | | | | |
| 900's | Flood Insurance Premiums to Insurance Agency | | | | |
| 1100's | | | | | |
| | Notary Fee to: | | | | |
| 1100's | Title Insurance Premiums to: **CONSUMER FIRST TITLE** | | | | 100.00 |
| 1200's | Filing Fees to Public Officials/ Recording Fees | | | | 50.00 |
| | Loan Proceeds to: **CONSUMER FIRST TITLE** | | | $ | 280,477.86 |
| | AMOUNT FINANCED | | | $ | 281,821.44 |
| | Prepaid Finance Charge | | | $ | 6,408.56 |

| | Itemization of Prepaid Finance Charge: | LENDER | BROKER* | POC | |
|---|---|---|---|---|---|
| 800's | Lender Origination Fee ( 0.1697 %) | 489.00 | | | |
| 800's | Broker FEE ( %) | | 3,650.00 | | LOAN |
| 800's | Loan Discount ( %) | | | | AMOUNT $288,230.00 |
| 900's | Prepaid Interest ( 3Days) | | | | |
| | @ $ 75.02 per day | 225.06 | | | |
| 800's | Underwriting Fee | 405.00 | | | |
| 1100's | Escrow/Closing Agent Fee | 600.00 | | | |
| 800's | Credit Reporting Fees | | 50.00 | | |
| 800's | | | | | |
| | Application Fee | 0.00 | 400.00 | | |
| | Doc Prep Fee | 0.00 | | | |
| | Tax Service Fee -LandAmerica Tax and Flood Services | 60.00 | | | |
| 800's | Wire Fee | 0.00 | | | |
| 800's | Flood Cert Fee -LandAmerica Tax and Flood Services | 9.50 | | | |
| 800's | Processing Fee | 0.00 | 500.00 | | |
| 800's | COURIER | 20.00 | | | |
| 800's | COURIER | | | | |
| 800's | | | | | |
| | Prepaid Finance Charge | 1,808.56 | 4,600.00 | | |
| | Total Prepaid Finance Charge | 6,408.56 | | | |

If your loan is prepaid before the maturity date, the loan fees and other similar charges will not be subject to any refund.

**\*  PREMIER MORTGAGE SOLUTIONS SERVICES INC**

I/We hereby acknowledge receipt of this itemization of amount financed, and authorize direct disbursement as set forth.

| | | | |
|---|---|---|---|
| Applicant  **MONICA CARROLL** | 9/23/05  Date | Applicant  **ROBERT CARROLL** | 9/23/05  Date |
| Applicant | 9/23/05  Date | Applicant | Date |

ITEMIZE XMM  11/16/04

**FREMONT** INVESTMENT&LOAN

Carr-Fremont00026

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

### For use with Adjustable Rate Mortgage Loans

Lender: **FREMONT INVESTMENT & LOAN**
2727 E IMPERIAL HIGHWAY
BREA, CA 92821

Date: September 23, 2005
Application #: 7000168085
**FINAL**

Borrower: **MONICA CARROLL and ROBERT CARROLL**

Property Location: 3326 17TH ST NW,
WASHINGTON, DC 20010

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 10.456 % | $ 861,322.56 | $ 281,821.44 | $ 933,144.00 |

Disclosures are estimates based on an anticipated funding date of    9/28/05

● means an estimate

Your payment schedule will be:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 24 | $ 2,423.60 | Monthly, beginning November 1, 2005 |
| 336 | $ 2,804.10 | Monthly, beginning November 1, 2007 |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |
|  | $ |  |

**Variable Rate Features**   Your loan contains a Variable Rate Feature.  Disclosures about the Variable Rate Feature have been provided to you earlier.

☒ Yes    ☐ No

**Insurance**   The following is required to obtain credit:
☒ Property Insurance    ☐ Flood Insurance

You may obtain the insurance from anyone you want that is acceptable to the creditor.

**Security:**   You are giving a security interest in:
☐ The property being purchased, including fixtures, leases, and rents derived from the property.
☒ Real property you already own, including fixtures, leases, and rents derived from the property.

**Late Charge:**   If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, You will pay a late charge to the Note Holder. The amount of the charge will be 6.0 % of my overdue payment of principal and interest.  You will pay this charge promptly but only once each late payment.

**Prepayment:**   If you pay off early, you
☒ may   ☐ will not   have to pay a penalty.
☐ may   ☒ will not   be entitled to a refund of part of the finance charge.

**Assumption:**   Someone buying your home
☐ cannot assume the remainder of the mortgage on the original terms.
☒ may, subject to conditions, be allowed to assume the remainder of the mortgage on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge receipt of this disclosure.

_Monica Carroll_ , 9/23/05
MONICA CARROLL    Date

_Robert G. Carroll_ 9/23/05
ROBERT CARROLL    Date

_Carroll__ , 9/23/05
Date

_____ , _____
Date

_____ , _____
Date

TIL TD 03/02/04

Carr-Fremont00027

PLAINTIFF'S
EXHIBIT

_13_

babbist

| Applicants | MONICA S CARROLL, ROBERT CARROLL | | | | | CARROLL, MONICA |
|---|---|---|---|---|---|---|
| Property Addr | 3328 17TH STREET, NW, Washington, DC 20010 | | | | Date Prepared | 07/22/2005 |
| Prepared By | PREMIER MORTGAGE SOLUTIONS  Ph: 301-883-8810 | | | | Loan Program | |
| | 9209 BASIL COURT, SUITE 100, UPPER MARLBORO, MD  20774 | | | | | |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Total Loan Amount $ 290,000    Interest Rate 7.400 %    Term 480 / 360 mths

| 800 | ITEMS PAYABLE IN CONNECTION WITH LOAN: | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|
| 801 | Loan Origination Fee | 1.000% | | $ | 2,900.00 | | | |
| 802 | Loan Discount | | | | | | | |
| 803 | Appraisal Fee | | | | (350.00) | | | ✓ |
| 804 | Credit Report | | | | 59.00 | | | |
| 805 | Lender's Inspection Fee | | | | | | | |
| 808 | Mortgage Broker Fee | 1.000% | | | 2,900.00 | | | |
| 809 | Tax Related Service Fee | | | | | | | |
| 810 | Processing Fee | | | | 600.00 | | | |
| 811 | Underwriting Fee | | | | 595.00 | | | |
| 812 | Wire Transfer Fee | | | | | | | |
| | COMMITTMENT FEE | | | | 400.00 | | | |
| | COURIER | | | | 25.31 | | | |

| 1100 | TITLE CHARGES: | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 1101 | Closing or Escrow Fee | | $ | 375.00 | | | |
| 1105 | Document Preparation Fee | | | 500.00 | | | |
| 1106 | Notary Fees | | | 25.00 | | | |
| 1107 | Attorney Fees | | | 425.00 | | | |
| 1108 | Title Insurance | | | 100.00 | | | |
| | COURIER | | | 75.00 | | | |
| | JUDGEMENT REVIEW | | | 59.00 | | | |

| 1200 | GOVERNMENT RECORDING & TRANSFER CHARGES: | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 1201 | Recording Fees | | $ | 75.00 | | | |
| 1202 | City/County Tax/Stamps | TAXES | | 1,287.00 | | | |
| 1203 | State Tax/Stamps | DC TAX | | 1,287.00 | | | |

| 1300 | ADDITIONAL SETTLEMENT CHARGES: | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 1302 | Pest Inspection | | $ | 75.00 | | | |
| | SURVEY | | | 150.00 | | | |

| | | | Estimated Closing Costs | 11,312.31 | | | |
|---|---|---|---|---|---|---|---|

| 900 | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|
| 901 | Interest for | 10 | days @ $ | 59.6111 | per day | $ | 596.11 | |
| 902 | Mortgage Insurance Premium | | | | | | | |
| 903 | Hazard Insurance Premium | | | | | | | |
| 904 | | | | | | | | |
| 905 | VA Funding Fee | | | | | | | |

| 1000 | RESERVES DEPOSITED WITH LENDER: | | | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|---|---|
| 1001 | Hazard Insurance Premium | 4 | months @ $ | 80.00 | per month | $ | 320.00 | | |
| 1002 | Mortgage Ins. Premium Reserves | | months @ $ | | per month | | | | |
| 1003 | School Tax | | months @ $ | | per month | | | | |
| 1004 | Taxes and Assessment Reserves | 6 | months @ $ | 107.29 | per month | | 643.74 | | |
| 1005 | Flood Insurance Reserves | | months @ $ | | per month | | | | |
| | | | months @ $ | | per month | | | | |
| | | | months @ $ | | per month | | | | |

| | | Estimated Prepaid Items/Reserves | 1,559.85 |
|---|---|---|---|
| TOTAL ESTIMATED SETTLEMENT CHARGES | | | 13,472.16 |
| COMPENSATION TO BROKER  (Not Paid Out of Loan Proceeds) | | $ | |

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | | TOTAL ESTIMATED MONTHLY PAYMENT: | |
|---|---|---|---|---|
| Purchase Price/Payoff (+) | 256,221.32 | New First Mortgage (-) | Principal & Interest | 1,887.01 |
| Loan Amount (-) | 290,000 | Sub Financing (-) | Other Financing (P & I) | |
| Est. Closing Costs (+) | 11,912.31 | New 2nd Mtg Closing Costs (+) | Hazard Insurance | 80.00 |
| Est. Prepaid Items/Reserves (+) | 1,559.85 | | Real Estate Taxes | 107.29 |
| Amount Paid by Seller (-) | | | Mortgage Insurance | |
| | | | Homeowner Assn. Dues | |
| | | | Other | |
| Total Est. Funds to you | 20,306.52 | | Total Monthly Payment | 2,074.30 |

☐ This Good Faith Estimate is being provided by _____ a mortgage broker and no lender has been obtained.  These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender. If your application is to purchase residential real property and the lender will take a first lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs," and if applicable the Consumer Handbook on ARM Mortgages.

Applicant  MONICA S CARROLL      7/22/05 Date        Applicant  ROBERT CARROLL      7/22/05 Date

Calyx Form gfe.frm 11/01

PLAINTIFF'S
EXHIBIT

14

 **FREMONT** INVESTMENT&LOAN

# Request for Verification of Employment

**Privacy Act Notice:** This information is to be used by the agency collecting it or its assignees in determining whether you qualify as a prospective mortgagor under its program. It will not be disclosed outside the agency except as required and permitted by law. You do not have to provide this information, but if you do not your application for approval as a prospective mortgagor or borrower may be delayed or rejected. The information requested in this form is authorized by Title 38, USC, Chapter 37 (if VA); by 12 USC, Section 1701 et.seq., (if HUD/FHA); by 42 USC, Section 1452b (if HUD/CPD); and Title 42 USC, 1471 et.seq. or 7 USC, 1921 et.seq. (if USDA/FmHA).

**Instructions: Lender** - Complete items 1 through 7. Have applicant(s) complete Item 8. Forward directly to employer named in Item 1
**Employer** - Please complete either Part II or Part III as applicable. Complete Part IV and return directly to lender named in Item 2
The form is to be transmitted directly to the lender and is not to be transmitted through the applicant or any other party.

## Part I - Request

| 1. To (Name and address of employer) | 2. From (Name and address of lender) |
|---|---|
| RETIRED | FREMONT INVESTMENT & LOAN<br>1065 N. PACIFICENTER DRIVE<br>ANAHEIM, CA 92806<br>(800) 927-5626 |
| Contact:                          Phone #: | |

I certify that this verification has been sent directly to the employer and has not passed through the hands of the applicant or any other interested party.

| 3. Signature of Lender | 4. Title | 5. Date | 6. Lender's Number (Optional)<br>927000166086 |
|---|---|---|---|

I have applied for a mortgage loan and stated that I am now or was formerly employed by you. My signature below authorizes verification of this information.

| 7. Name and Address of Applicant (include employee or badge number)<br>ROBERT CARROLL             SSN 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<br>3328 17TH STREET NW<br>WASHINGTON, DC 20010 | 8. Signature of Applicant<br><br>(See Attached Authorization) |
|---|---|

## Part II - Verification of Present Employment

| 9. Applicant's Date of Employment | 10. Present Position | 11. Probability of Continued Employment |
|---|---|---|

| 12A. Current Gross Base Pay (Enter Amount and Check Period) | | 13. For Military Personnel Only | | 14. If Overtime or Bonus is Applicable, is its Continuance Likely?   Overtime ☐ Yes ☐ No   Bonus ☐ Yes ☐ No |
|---|---|---|---|---|
| ☐ Annual  ☐ Hourly<br>☐ Monthly  ☐ Other (Specify)<br>$ _____   ☐ Weekly | | Pay Grade | | |
| | | Type | Monthly Amount | |
| | | Base Pay | $ | 15. If paid hourly - average hours per week |

**12B. Gross Earnings**

| Type | Year to Date | Past Year | Past Year | | | |
|---|---|---|---|---|---|---|
| | | | | Rations | $ | 16. Date of applicant's next pay increase |
| Base Pay | $ | $ | $ | Flight or Hazard | $ | 17. Projected amount of next pay increase |
| Overtime | $ | $ | $ | Clothing | $ | |
| | | | | Quarters | | 18. Date of applicant's last pay increase |
| Commissions | $ | $ | $ | Pro Pay | $ | |
| Bonus | $ | $ | $ | Overseas or Combat | $ | 19. Amount of last pay increase |
| Total | $ | $ | $ | Variable Housing Allowance | $ | |

## Part IV - Authorized Signature
Federal Statutes provide severe penalties for any fraud, intentional misrepresentation, or criminal connivance or conspiracy purposed to influence the issuance of any guaranty or insurance by the VA Secretary, the U.S.D.A., FmHA/FHA Commissioner, or the HUD/CPD Assistance Secretary.

| 26. Signature of Employer | 27. Title (Please print or type) | 28. Date |
|---|---|---|
| 29. Please print or type name signed in item 26. | 30. Phone No. | |

## FINAL VERIFICATION OF EMPLOYMENT

| Date: | Phone: |
|---|---|
| Contact: | |

| Presently employed? ☒ Yes ☐ No | Self-employed? ☐ Yes ☒ No |
|---|---|

### TELEPHONE VERIFICATION ONLY, DO NOT MAIL.

Comments:   **2ND JOB FOR CO-BWR W/VICTORIA'S SECRET AS A SALES ASSOCIATE FOR 1YR.**

**SEE THE WORK NUMBER VOE FOR PREVIOUS JOB HIST. ON 2ND JOB.**

Verified By: **MARITZA DIAZ**

ITVOE2   REVISED 05/04/98



OFFICE OF TAX AND REVENUE



RECORDER OF DEEDS

NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
OR CONDOMINIUM UNIT

(Pursuant to Public Law 90-566, approved October 12, 1968)

TO: (List Name and address of each owner of the real property encumbered by said deed of
trust, mortgage or security instrument.)

Monica Carroll, Robert Carroll, Apartment 1
3328 17th St., NW, Washington, DC 20010
(202) 332-3609

Occupant
3328 17th St., NW, Washington, DC 20010

FROM: Cohn, Goldberg & Deutsch, LLC            PHONE: 410-296-2550

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY
THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL
PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A
FORECLOSURE SALE TO BE HELD AT THE OFFICE OF Alex Cooper Auctioneers, Inc.,
5301 Wisconsin Ave., NW, Suite 750, Washington, DC 20015 ON June 10, 2008 at 10:32
AM. THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO
EXCEED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF
FORECLOSURE SALE AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL
EXPIRE.

Security instrument recorded in the land records of the District of Columbia at the Recorder of
Deeds on October 19, 2005

Liber: _____ Folio: _____   Instrument No. 2005149938

Maker(s) of Note secured by the instrument:
   Monica Carroll, Robert Carroll
   3328 17th St., NW, Washington, DC 20010      (202) 332-3609

Description of Property: _____ dwelling
                    (i.e. 2-story brick dwelling, apartment building, vacant lot, condominium unit, etc.)

Address: 3328 17th St., NW, Washington, DC 20010

Lot & Square No. 663 / 2612 _____ or Parcel No: _____

Holder of the Note: Mortgage Electronic Registration Systems, Inc. as nominee for Fremont
Investments & Loan; (866) 484-3609
               c/o Cohn, Goldberg & Deutsch, 600 Baltimore Ave., Suite 208,
               Towson, MD 21204, 410-296-2550

Balance owed on the note: $320,813.24 approximately as of 4/19/2008, plus all attorney's
fees, foreclosure costs, and all accruals, under the terms of the Deed of Trust and Note,
through the date of tender.

Minimum balance required to cure default obligation pursuant to D.C. Law 5-82 "Right to Cure
a Residential Mortgage Foreclosure Default Act of 1984" $38,575.62 approximately as of
4/19/2008 plus attorney's fees, foreclosure costs, and all accruals, under the terms of the
Deed of Trust and Note, through the date of tender.

Person to contact to stop foreclosure sale: Edward S. Cohn, Esq., Cohn, Goldberg &
Deutsch, 600 Baltimore Ave., Suite 208, Towson, MD 21204,      410-296-2550
           (Address)                                    (Phone Number)
                              (over)

**************************************************************************************

     I, hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on May 9, 2008; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

May 9, 2008              _____ , agent
(Date)                 (Signature of the Noteholder or his agent)

I, Rita Abrams, a Notary Public in and for the District of Columbia, DO HEREBY CERTIFY THAT J.S. Krieger, party/ies to this Notice of Foreclosure Sale bearing date on the 9th day of May, 2008 personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be his/her/their act and deed.

     Given under my hand and seal this the 9th day of May, 2008.

_____
Notary Public

My commission expires 6/14/10

ROD form ADM/04
Revised   1/86

Rita Abrams
Notary Public, District of Columbia
My Commission Expires 6-14-2010

AFTER RECORDING RETURN TO:
Cohn, Goldberg, Deutsch
600 Baltimore Ave., Suite 208
Towson, MD 21204
410-296-2550

Alex Cooper Auctioneers, Inc.
Folio No. W-9409

Certified True Copy

# ADJUSTABLE RATE NOTE
(6-Month LIBOR Index · Rate Caps)
(Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

September 23, 2005          BREA, CA 92821
      [Date]                      [City]                              [State]

3328 17TH STREET NW, WASHINGTON, DC 20010

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    288,230.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  FREMONT INVESTMENT & LOAN

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.500 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on  November 1, 2005 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  October 1, 2035                           , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2727 E IMPERIAL HIGHWAY, BREA CA 92821

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $    2,423.60    . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) - Single Family - Freddie Mac UNIFORM INSTRUMENT

VMP®-815N (0404)           Form 5520 3/04
     VMP Mortgage Solutions (800)521-7291
Page 1 of 4                   Initials

(A)  Change Dates

The interest rate I will pay may change on the first day of October 1, 2007 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B)  The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available 45 days before each Change Date is called the "Current Index."

If the index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding    S i x  and  Twenty-Nine Hundredths                percentage points (   6.2900   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than   11.500       % or less than    9.5000      %. Thereafter, my interest rate will never be increased or decreased on any subsequent Change Date by more than   1.5000       from the rate of interest I have been paying for the preceding period. My interest rate will never be greater than      15.5000               % or less than    9.5000    %.

(E)  Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY
**•SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF•**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a Prepayment. When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder *may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.*

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6.0 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

VMP®-815N (0404)                    Page 3 of 4                    Form 5520 3/04
                                                                  Initials: ____

Transfer... ... ... ... ... ... ... ... ... ... ... ... in this Section 18, "Interest in the
Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests
transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is
the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural
person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may
require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be
exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if (a)
Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a
new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be
impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is
acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent
to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to
Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security
Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases
Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of
acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance
with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay
these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument
without further notice or demand on Borrower.

*SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF*

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)        _____ (Seal)
MONICA CARROLL            -Borrower      ROBERT CARROLL            -Borrower


_____ (Seal)        _____ (Seal)
                          -Borrower                                -Borrower


_____ (Seal)        _____ (Seal)
                          -Borrower                                -Borrower


_____ (Seal)        _____ (Seal)
                          -Borrower                                -Borrower


*[Sign Original Only]*



-815N (0404)                    Page 4 of 4                    Form 5520 3/04

PREPAYMENT RIDER TO NOTE

THIS PREPAYMENT RIDER is made this 23rd      day of September, 2008 and is incorporated into
and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") to

FREMONT INVESTMENT & LOAN

(the "Lender") of the same date covering the property located at

3328 17TH STREET NW, WASHINGTON, DC 20010

(PROPERTY ADDRESS)

**BORROWER'S RIGHT TO PREPAY**
This Prepayment Rider Supersedes Section 5      of the Note

I have the right to make payments of principal at any time before they are due.  A payment of principal
only is known as a "prepayment".  When I make a prepayment, I will tell the Note Holder in a letter that I
am doing so.  A prepayment of all of the unpaid principal is known as a "full payment."  A prepayment of
only part of the unpaid principal is known as a "partial prepayment."

I may make a full or partial prepayment; however, the Note Holder may charge me for the privilege of
prepayment.  If a partial or full prepayment is made within 2   years from the date the deed of trust is
executed, a prepayment charge shall be assessed in an amount equal to two (2) months advance interest
on the amount of the prepayment that when added to all other amounts prepaid during the 12 month
period immediately preceding the date of the prepayment, exceeds one third (1/3) of the original principal
amount of the Note.   If I make a prepayment, there will be no delays in the due dates or changes in the
amount of my monthly payments unless the Note Holder agrees in writing to those delays or changes.  I
may make a full prepayment at any time.  If I choose to make a partial prepayment the Note Holder may
require me to make the prepayment on the same day that one of my monthly payments is due.

_____ 9/23/05          _____ 9/23/0
HONICA CARROLL              DATE            ROBERT CARROLL              DATE

_____                  _____
                   DATE                                        DATE

DCPPY1 CL4/11/05


PLAINTIFF'S
EXHIBIT
16

Certified True Copy

# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)
### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**September 23, 2005**            **BREA, CA 92821**
   [Date]            [City]            [State]

**3328 17TH STREET NW, WASHINGTON, DC 20010**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **288,230.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **FREMONT INVESTMENT & LOAN**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **9.500** %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on **November 1, 2005** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **October 1, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **2727 E IMPERIAL HIGHWAY, BREA CA 92821**

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **2,423.60** . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) - Single Family - Freddie Mac UNIFORM INSTRUMENT**

VMP-815N (0404)            Form 5520 3/04
VMP Mortgage Solutions (800)521-7291
Page 1 of 4            Initials:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)   Change Dates**

The interest rate I will pay may change on the first day of **October 1, 2007**          , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)   The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding       **Six and Twenty-Nine Hundredths**                percentage points (   **6.2900**        %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.500**          % or less than   **9.5000**          %. Thereafter, my interest rate will never be increased or decreased on any subsequent Change Date by more than **1.5000**                    from the rate of interest I have been paying for the preceding period. My interest rate will never be greater than        **15.5000**          % or less than   **9.5000**      %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date.   I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**

**\*SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF\***

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a Prepayment.   When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

1815N2MS     01/01                               Page 2 of 4                                              Initials:

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **6.0** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

-81SN (0404)

Page 3 of 4

Form 5520 3/04

Initials: _____

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**•SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF•**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
MONICA CARROLL                    -Borrower        ROBERT CARROLL                    -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                                          -Borrower

*[Sign Original Only]*

-815N (0404)                          Page 4 of 4                          Form 5520 3/04

## PREPAYMENT RIDER TO NOTE

THIS PREPAYMENT RIDER is made this 23rd      day of September, 2005and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") to:

FREMONT INVESTMENT & LOAN

(the "Lender") of the same date covering the property located at:

3328 17TH STREET NW, WASHINGTON, DC 20010

(PROPERTY ADDRESS)

### BORROWER'S RIGHT TO PREPAY
This Prepayment Rider Supersedes Section 5      of the Note

I have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment".  When I make a prepayment, I will tell the Note Holder in a letter that I am doing so.  A prepayment of all of the unpaid principal is known as a "full payment."  A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full or partial prepayment; however, the Note Holder may charge me for the privilege of prepayment.  If a partial or full prepayment is made within 2   years from the date the deed of trust is executed, a prepayment charge shall be assessed in an amount equal to two (2) months advance interest on the amount of the prepayment that when added to all other amounts prepaid during the 12 month period immediately preceding the date of the prepayment, exceeds one third (1/3) of the original principal amount of the Note.   If I make a prepayment, there will be no delays in the due dates or changes in the amount of my monthly payments unless the Note Holder agrees in writing to those delays or changes.  I may make a full prepayment at any time.  If I choose to make a partial prepayment the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due.

MONICA CARROLL          DATE 9/23/05        ROBERT CARROLL          DATE 9/23/c

DATE                    DATE

DCPPY1 CL4/11/05