## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

**ROBERT CARROLL and MONICA CARROLL,**

               **Plaintiffs,**

      **v.**

**FREMONT INVESTMENT & LOAN, et. al,**

             **Defendants.**

</td><td>

**Civil Action 08-00900 (HHK)**

</td></tr>
</table>

### MEMORANDUM OPINION AND ORDER

Robert Carroll and his daughter Monica Carroll bring this action against two mortgage lenders, Fremont Investment and Loan ("Fremont") and Litton Loan Servicing LP ("Litton"), several companies involved in obtaining their loan, including JMJ Appraisal Services, LLC ("JMJ"), and several individuals who are officers or employees of those companies. The Carrolls bring a number of common law claims and a District of Columbia statutory claim in connection with a loan that Fremont made to them, and that defendants allegedly falsified and knew the Carrolls could not afford. Fremont, Litton, and three of the individual defendants have moved to dismiss the Carrolls' claims or for summary judgment. Upon consideration of the motions, the oppositions thereto, and the record of this case, the Court concludes that defendants' motions to dismiss should be granted in part and denied in part and that their motions for summary judgment should be denied.

### I.  BACKGROUND

The Carrolls are owners by joint tenancy with Annette Carroll of a townhouse in the District of Columbia. Robert Carroll is elderly and disabled; Monica Carroll is severely disabled

by dyslexia.  The Carrolls purchased their home in 1992 for $161,500.  In 2005, the Carrolls

applied for a loan to refinance their existing loan on their home, which had an interest rate of 6.4

percent.  Defendant Premier Mortgage Solutions, Services, Inc. ("Premier Mortgage") brokered

the mortgage and loan on behalf of Fremont, and one of Premier Mortgage's employees,

defendant Frank Okebugwu, prepared the loan application.  According to the Carrolls, the terms

of the loan were supposed to include an interest rate of 7.4 percent and monthly payments of

$1,887.  The final loan, however, issued in July 2005 and signed by the Carrolls, included a

variable interest rate that climbed to 11.5 percent and monthly payments of $2,748.  The closing

costs on the loan, according to the Carrolls, were approximately one-third of the value of the

loan; the Carrolls received $21,593 and closing costs were $10,385.  The Carrolls state that

defendant Litton now holds the mortgage.

To obtain the loan, the Carrolls allege that Premier Mortgage grossly overstated their

income and assets and that JMJ's appraisal grossly overvalued their home.  They state that

Premier Mortgage required the Carrolls to provide written verification of their income, and that

they understood that such verification was essential to qualifying for and obtaining the loan.  The

Carrolls assert that they provided such verification, showing that Monica Carroll earned $2,706

per month and Robert Carroll earned $1,107.40 per month.  The loan application, however,

stated that Monica Carroll's monthly income was $5,465 per month and Robert Carroll's was

$1,386.25 per month.  Similarly, the Carrolls state that the District of Columbia Office of Tax

and Assessments valued their home at $461,230 for tax year October 2004 to September 2005,

but the loan application stated that the market value of their home was $650,000.

The Carrolls allege that defendants violated the District of Columbia's consumer protection laws by making an unconscionable loan, defrauded them, acted negligently, and breached a fiduciary duty owed to them.  Had they known and understood its terms, the Carrolls state that they would not have agreed to the Fremont loan.

In September 2006, the Carrolls brought a similar lawsuit against Fremont in this Court. *See Carroll v. Fremont Investment & Loan*, 1:06-cv-01641 (September 22, 2006).  In connection with that case, in October 2006, Fremont sent the Carrolls' attorney a four-page settlement agreement with an attached payment plan.  Because of the relevance of the first page to this dispute, this memorandum replicates it in whole:

FORBEARANCE AGREEMENT

Fremont Investment & Loan, ("Lender") and MONICA CARROLL; ROBERT CARROLL ("Borrower") acknowledge and agree that:

ACKNOWLEDGMENTS

1.  On 9/28/2005 Borrowers executed that certain promissary note ("the Note") in the face amount of $288,230, which evidences a loan in that amount.  The Note is secured by a Deed of Trust or Mortgage ("the Mortgage") upon the Property at 3328 17TH ST NW, ("The Property").  The Note and the Mortgage are hereafter collectively referred to as "the Loan" or the "Loan Documents."

2.  Borrower has defaulted on the Loan.  $14,796.44 is delinquent ("the Default") and $287,213.67 is due. ("The Debt.")

3.  ~~Borrower acknowledges the Default and the Debt and further acknowledges Borrower has no defense or legal objection to the Note, the Mortgage, the Loan or the Debt.~~

4.  Borrower has requested Lender to temporarily forbear enforcement of its rights under the Loan to better enable Borrower to cure the Default.

5.  Lender has agreed to temporarily forbear enforcement of its rights under the Loan pursuant to the terms of this Forbearance Agreement.  ("The Agreement.")

3

>   6.  In consideration of the mutual benefits of this Agreement, Borrower and
>   Lender agree as follows:

Fremont Mot. Dismiss Ex. B.  Page two of the agreement is headed "<u>AGREEMENTS</u>" and is

followed by seventeen paragraphs on pages two through four.  These paragraphs require

installment payments, describe what will happen if the Carrolls breach the agreement, and state

that during the time that the Carrolls fully perform, Fremont will not take any steps to prosecute

the foreclosure, among other things.  Relevant to this case, paragraph 14 states:

>   14.  <u>BORROWER RELEASE OF LENDER</u>.  Borrower hereby releases Lender of
>   any and all claims known or unknown, which Borrower has against Lender which
>   in any way arise from or relate to the Loan, the Default or the Debt.  Borrower
>   also specifically waives any right it has under any statute, which provides that a
>   release does not extend to claims, which the releasor does not know and suspect to
>   exist in his favor at the time of executing the release, which, if known by him,
>   would materially affect his settlement with the releasee.

*Id*.

It is undisputed that the Carrolls signed at the bottom of the first page of this agreement

and sent that signed first page back to Fremont in November 2006; the import of that signature is

in dispute.  In January 2007, the Carrolls moved to dismiss their first lawsuit without prejudice.

According to Fremont, the Carrolls dismissed that lawsuit as part of a settlement agreement with

Fremont.  In May 2008, the Carrolls brought the instant lawsuit.

## II.  ANALYSIS

This case comes before the Court upon defendants' motions to dismiss or for summary

judgment.  There are ten defendants in this case:  (1) Fremont, the original lender; (2) Litton,

allegedly the assignee of the loan; (3) Premier Mortgage, a mortgage brokerage company (which

may have changed its name to Smith-Meyers Corporation); (4) Smith-Meyers Corporation, a

mortgage brokerage company; (5) Jeffrey Smith, the president of Smith-Meyers Corporation, (6) Frank Okebugwu, a loan officer for Premier Mortgage Solutions, Services, Inc. and/or Smith-Meyers Corporation; (7) J.G. Enterprises LLC, the owner of the trade name used by Premier Mortgage; (8) Sheila Locke, an agent or employee of Premier Mortgage; (9) JMJ, an appraisal company; and (10) Shannon Ingram, an officer or employee of JMJ who performed the appraisal on the Carrolls' home.

Defendants Fremont and Litton are represented by counsel and have filed motions to dismiss or for summary judgment [## 49, 65]. Defendants Okebugwu, Ingram and Smith (collectively, "the individual defendants") are proceeding *pro se* and have filed motions to dismiss or for summary judgment [## 67, 68, 69]. The other five defendants have not entered appearances nor responded to the Carrolls' amended complaint. The motions to dismiss or for summary judgment of Fremont, Litton, and the individual defendants will be addressed in turn.

**A.      Fremont's Motion to Dismiss or for Summary Judgment**

Fremont makes two principal arguments in its motion to dismiss or for summary judgment. First, Freemont argues that the Court should enforce the settlement agreement between it and the Carrolls and dismiss the Carrolls' amended complaint against Fremont. Second, it argues that even if the Court does not enforce the settlement agreement, it should dismiss the Carrolls' amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court turns to these arguments.

### 1.  Motion to Enforce Settlement Agreement

Fremont's motion to enforce the settlement agreement depends upon materials beyond the allegations in the amended complaint or documents attached to the compliant, and therefore the

Court must convert it to a motion for summary judgment.  *Marshall Co. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).  The Carrolls resist such a conversion prior to discovery, providing the Court with a Federal Rule of Procedure 56(f) statement.

"Summary judgment ordinarily is proper only after the plaintiff has been given adequate time for discovery."  *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1032 (D.C. Cir. 2003) (internal quotations omitted).  The Federal Rules provide that a court "may . . . deny the motion [or] order a continuance to enable . . . discovery" if "a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(f).  Where "plaintiffs' papers fail to identify any facts essential to opposing [a motion for summary judgment] as to which discovery is needed," however, summary judgment may be appropriate.  *See Curtin v. United Airlines, Inc.*, 275 F.3d 88, 91 (D.C. Cir. 2001).

Here, the Carrolls have moved for a continuance under Rule 56(f), and their attorney has submitted a Rule 56(f) declaration.  *See* Pls.' Opp'n to Fremont Mot. Dismiss Ex. A.  The declaration states that "[p]laintiffs show herein what facts are sought and how they will be obtained."  *Id*.  It then states that "[d]iscovery will show that there was no binding settlement agreement."  *Id*. ¶ 4.  This statement is entirely conclusory.  The declaration fails to identify any facts essential to opposing Fremont's motion for summary judgment that the Carrolls would obtain through discovery (i.e., facts that would show that there was no binding settlement agreement) or to give any reason for why the Carrolls have been unable to obtain the facts prior to discovery, or how they would obtain them through discovery.  Therefore, the Court will consider Fremont's motion for summary judgment.

Fremont argues that it should be granted summary judgment because the Carrolls entered into a settlement agreement with Fremont that waived future legal action against Fremont with respect to the loan at issue in this case.[1]  Fremont points to the four-page settlement agreement and attached payment plan.  Page three of the agreement states, "Borrower hereby releases Lender of any and all claims known or unknown, which Borrower has against Lender which in any way arise from or relate to the Loan, the Default or the Debt."  Fremont Mot. Dismiss Ex. B at 3.  The agreement also states that "[d]uring the term of this Agreement and while Borrower fully performs under this Agreement, Lender will not take any further steps to prosecute the foreclosure," *id*. at 2, and that "[i]f Borrower successfully completes the Agreement, but still has not cured the Default, Lender may, but is not obligated to, extend the Agreement on the same or different terms," *id*. at 3.  Attached to the agreement was a payment plan setting out dates and amounts to be paid.  The agreement is signed at the bottom of page one by the Carrolls and on page four by a Fremont representative.

---

[1]  Under FED. R. CIV. P. 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  Material facts are those "that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id*. at 255.  The non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor.  *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50.

Fremont contends that the Carrolls agreed to this settlement as evidenced by their signatures.  Fremont further argues that the Carrolls acted consistent with the terms of the agreement and in furtherance of the agreement when they dismissed the lawsuit, and made the initial payment and three subsequent payments required under the payment plan.  *See id*. Ex. C–E.  Finally, Fremont contends that it also acted consistent with the settlement agreement when it ceased its efforts to foreclose on the Carrolls' home, *see* Fremont's Reply to Pls.' Opp'n to Fremont Mot. Dismiss Ex. 1 ¶ 12, and offered them a loan modification on March 27, 2007 that would reduce the interest rate to 7.5 percent, *see* Fremont Mot. Dismiss Ex. F.

The Carrolls rejoin that there is no binding settlement agreement that includes a legal release because it was never their intention to agree to the entire four page contract.  Instead, according to the Carrolls, by signing and sending back only the first page, they made a counter-offer to Fremont, an agreement consisting only of the first page.  As evidence that they did not intend to agree to the entire agreement, they point to the fact that on the first page of the agreement, they struck out a provision which reads, "Borrower acknowledges the Default and the Debt and further acknowledges Borrower has no defense or legal objection to the Note, the Mortgage, the Loan or the Debt."  *See* Pls.' Opp'n to Fremont Mot. Dismiss Ex. 23.  Striking this provision, they argue, is inconsistent with an intent to agree to the entire four page agreement, which included the legal release, as is their dismissal of the prior suit *without prejudice*.  The Carrolls further point to Monica Carroll's declaration, which states:

40.     The acknowledgment to the release was stripped of the remaining pages that we would not agree to and it was signed and paragraph 3 of 1 was struck through.  We refused to sign the 4-page agreement.

41.     We never agreed to a release and we struck through ¶ 3.

42.     The dismissal of the lawsuit was based on the advice of counsel and we
planned on refiling it.  It was <u>not</u> a condition to a deal with Fremont.

Pls.' Opp'n to Fremont  Mot. Dismiss Ex. E.  The Carrolls also contend that the payments they

made to Fremont were not in conformity with the agreement, but were merely the monthly

amount due on the loan, and that Fremont's purported offer of a loan modification had nothing to

do with the settlement agreement, but was a simple form letter.

Fremont replies that the Carrolls admit that their counsel received a four-page document

with a one-page payment plan.  The only correspondence between the Carrolls' attorney and

Fremont following the Carrolls' receipt of the four-page agreement is a letter stating, "I just

received the 'Forbearance Agreement.'  It was faxed here late yesterday.  Paragraph 3 states

conditions that we did not discuss.  I think this paragraph goes to [sic] far and ask that it be

struck."  *See* Pls.' Opp'n to Fremont Mot. Dismiss Ex. 20.  Fremont points out that this letter

does not state any objection to the remaining twenty-two paragraphs transmitted to the Carrolls

or say anything about pages two through four of the agreement.  Fremont states that it did not

object to striking paragraph three, and thus accepted this modification to the agreement.  The

notion that the Carrolls agreed only to the first page, according to Fremont, is untenable, because

if that were the case, the agreement would conclude with the last line of the first page of the

agreement, which states, "In consideration of the mutual benefits of this Agreement, Borrower

and Lender agree as follows:".  *See* Pls.' Opp'n to Fremont Mot. Dismiss at 1.

In the District of Columbia Circuit, the issue of "[w]hether parties have reached a

settlement is a question of contract law."  *United States v. Mahoney*, 247 F.3d 279, 285 (D.C.

Cir. 2001); *see Brown v. Brown*, 343 A.2d 59, 61 (D.C. 1975) ("In this jurisdiction, it is well

established that settlement agreements are entitled to enforcement under general principles of contract law . . . .").  State law governs the enforcement of settlement agreements.  *Makins v. District of Columbia*, 277 F.3d 544, 547 (D.C. Cir. 2002).  In the District of Columbia, a complete enforceable contract exists when there is (1) an agreement as to all the material terms; and (2) an intention of the parties to be bound."  *Hood v. District of Columbia*, 211 F. Supp. 2d 176, 179 (D.D.C. 2002).  "The District of Columbia adheres to the 'objective law of contracts,' meaning that the Court must look at the parties' objective manifestations of intent in interpreting settlement agreements."  *Id.* at 180; *see also Hercules & Co., Ltd. v. Shama Rest. Corp.*, 613 A.2d 916, 927 (D.C. 1992) ("The first and most important step in ascertaining that intent is examination of the contract itself," for "if a document is facially unambiguous, its language should be relied upon as providing the best objective manifestation of the parties' intent.") (internal quotation omitted).

"The determination of whether an enforceable contract exists, when based on the contract documents, is a question of law . . . ."  *Rosenthal v. Nat'l Produce Co.*, 573 A.2d 365, 369 n.9 (D.C. 1990).  The party asserting the existence of a settlement agreement bears the burden of proof and must show that an enforceable contract exists as to all elements including agreement to all material terms, and the intention of the parties to be bound.  *Kilpatrick v. Paige*, 193 F. Supp. 2d 145, 152 (D.D.C. 2002).  To determine whether the parties intended to be bound, the Court must examine the parties objective manifestations of intent.  *See Akassy v. William Penn Apartments Ltd.*, 891 A.2d 291, 299 (D.C. 2006) ("[T]he reasonable person standard is applied both to the circumstances surrounding the contract and the course of conduct of the parties under the contract.") (citing *1901 Wyoming Ave. Coop. Ass'n v. Lee*, 345 A.2d 456, 461-62 (D.C.

10

1975)).  "When there is a genuine dispute about whether the parties have entered into a binding settlement, the district court must hold an evidentiary hearing."  *Mahoney*, 247 F. 3d at 285.

Fremont argues that by signing the settlement agreement on the first page, the Carrolls objectively manifested their intent to agree to the entire settlement agreement.  The Carrolls respond that they only signed (and only agreed to) the first page of the settlement agreement and that the first page constituted the entirety of the enforceable contract.  Fremont replies that where the Carrolls signed the settlement agreement is immaterial.

There is scant law addressing this issue.  The single pertinent District of Columbia case is ambiguous.  *See Altman v. De Jong*, 113 A.2d 747 (D.C. 1955).  While it may not matter where a party signs a contract, *see Master Palletizer Sys., Inc. v. T.S. Ragsdale Co., Inc.*, 725 F. Supp. 1525, 1531-32 (D. Colo. 1989) ("A party need not sign every page of a contract for the whole of the document to be effective."), this is only true insofar as there is a meeting of the minds and an intention to be bound, *see Petrie v. Haddock*, 119 A.2d 45, 46-47 (Pa. 1956) ("There is no requirement that a contract be signed at any particular place so long as the signatories attest the meeting of their minds on the basis of the agreed-upon writings and their intention to be obligated accordingly.").

Here, the very question is whether the Carrolls intended to be bound. Therefore, the Court must look to other objective manifestations of intent.  The Court concludes that Fremont has not met its burden of showing that an enforceable contract exists at the summary judgment stage because it has not shown that the Carrolls' objective manifestations evidenced an intent to be bound to pages two through four of the contract.  After receiving the four page contract, the

Carrolls faxed back only the first page of the contract and signed only at the bottom of the first page despite the fact that the contract had initial or signature lines on each of the four pages.

Further, the Court agrees with the Carrolls that the fact that they struck through paragraph three of the contract, which provided that they had "no defense or legal objection to the Note," Fremont Mot. Dismiss Ex. B, is inconsistent with an intent to be bound to paragraph fourteen, which released Fremont from "any and all claims known or unknown, which [the Carrolls] ha[ve] against [Fremont] which in any way arise from or relate to the Loan." Such "claims . . . which in any way arise from or relate to the Loan" are "legal objections to the Note." Nor do the Carrolls' four payments to Fremont, allegedly in accordance with the terms of the settlement agreement, indicate a clear course of conduct consistent with the settlement agreement because three of these payments were simply the monthly amount due on the loan regardless of any settlement agreement. The Court concludes that Fremont's motion for summary judgment must be denied.

### 2.     *Motion to Dismiss under Rules 12(b)(6) and 9(b)*

In the alternative, Fremont argues that the Carrolls' amended complaint does not assert claims for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) and/or do not meet the particularity requirements of Federal Rule of Civil Procedure 9(b). A court may dismiss a complaint or any portion of it for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A court considering a motion to dismiss under Rule 12(b)(6) must assume that all factual allegations in the complaint are true, even if they are doubtful. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kowal v. MCI Comms. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (noting that a court must construe the complaint "liberally in the

plaintiffs' favor" and "grant plaintiffs the benefit of all inferences that can be derived from the

facts alleged"). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

relief,'" however, "requires more than labels and conclusions . . . . Factual allegations must be

enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal

citations omitted). Rule 9(b) states: "In all averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and

other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Under Rule

9(b), the court requires "the pleader . . . [to] state the time, place and content of the false

misrepresentations, the fact misrepresented and what was retained or given up as a consequence

of the fraud." *Kowal*, 16 F.3d at 1278. Rule 9(b)'s particularity requirement serves several

purposes, including discouraging nuisance suits, safeguarding potential defendants from

frivolous accusations of moral turpitude, and guaranteeing defendants sufficient information to

allow for preparation of a response. *U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389

F.3d 1251, 1256 (D.C. Cir. 2004).

The Court next addresses Fremont's motion to dismiss as to each count of the Carrolls'

ten-count complaint.

> *a. Count 1 - Violation of the District of Columbia's Consumer Protection*
> *Law*

Fremont argues that count 1 must be dismissed pursuant to Federal Rules of Civil

Procedure 9(b) and 12(b)(6). According to Fremont, count 1 essentially alleges fraud, and lacks

the particularity required by Rule 9(b), instead containing a series of conclusory

misrepresentations made by unidentified defendants.  The Carrolls rejoin that their amended

complaint goes well beyond the particularity required by Rule 9(b).

Count 1 of the Carrolls' amended complaint alleges unconscionability under the District

of Columbia's Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.* ("DCCPPA").

Under that Act, it is unlawful to

> (r) make or enforce unconscionable terms or provisions of sales or leases; in
> applying this subsection, consideration shall be given to the following, and other
> factors:
>> (1) knowledge by the person at the time credit sales are consummated that
>> there was no reasonable probability of payment in full of the obligation by the
>> consumer; . . . and
>> (5) that the person has knowingly taken advantage of the inability of the
>> consumer reasonably to protect his interests by reason of age, physical or mental
>> infirmities, ignorance, illiteracy, or inability to understand the language of the
>> agreement, or similar factors . . . .

D.C. Code § 28-3904(r).[2]  In support of this count, the Carrolls allege that "Fremont Investment

& Loan . . . knew or should have known that Plaintiffs' income had been falsified and that

appraised value [sic] was fraudulently overstated," Am. Compl. ¶ 1, and that "[t]he Fremont loan

contains numerous unreasonable costs that Defendants knew or should have known Plaintiffs

could not afford.  Defendants took advantage of Robert Carroll's age and disabilities and Monica

Carroll's disability of extreme dyslexia in securing their signatures on the loan documents," *id*. ¶

45.  The Carrolls further allege that "[a]t all times relevant herein, the Defendant mortgage

---

[2] It is not clear that Rule 9(b) applies to the Carroll's DCCPPA count, as Fremont asserts.
While this Court has previously applied Rule 9(b) to a DCCPPA claim, it was in a case in which
the relevant provisions of the DCCPPA specifically barred misrepresentations and omissions of
material fact which tended to mislead.  *See Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455,
464 (D.D.C. 1997).  Here, the relevant provision of the DCCPPA bars making or enforcing
unconscionable terms and does not clearly relate to fraud.  Whether or not Rule 9(b) applies is
not dispositive, however, because the Court concludes that the Carrolls's amended complaint
complies with Rule 9(b).

brokerage firms, their agents and employees and the appraiser were the agents of Fremont. . . . Their acts and omissions are binding on Fremont." *Id.* ¶ 58.  The Court concludes that these allegations are not frivolous and are sufficiently detailed to allow Fremont to prepare its response.  *See U.S. ex rel. Williams*, 389 F.3d at 1256.  The Carrolls' amended complaint puts Fremont on notice that the Carrolls allege that Fremont knew, either actually or through its agents, that there was no reasonable probability that the Carrolls could pay their obligation to Fremont because the income of the Carrolls and value of their home were knowingly falsified on the application.

Fremont further argues that count 1 does not plead a valid DCCPPA claim because the Carrolls do not plead a material misrepresentation or omission that has a tendency to mislead.  In support of this argument, Fremont cites *Alicke v. MCI Comm. Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997).  The provisions of the DCCPPA at issue in *Alicke*, however, were provisions (e) and (f), each of which required a tendency to mislead.  *See* D.C. Code § 28-3904 (e) ("misrepresent as to a material fact which has a tendency to mislead"); (f) ("fail to state a material fact if such failure tends to mislead").  The provision of the DCCPPA that the Carrolls allege Fremont violated, by contrast, does not require a material misrepresentation or omission that has a tendency to mislead.  *See id.* § 28-3904(r) ("make or enforce unconscionable terms or provisions of sales").  The Court concludes that it must deny Fremont's motion to dismiss as to count 1.

### b.  Count 2 - Declaratory Judgment

Fremont argues that the Carrolls' second count does not allege a valid claim for a declaratory judgment against Fremont, and is instead brought against Litton.  The Carrolls respond that "[w]hile it is not known with certainty who owns the mortgage, Count II is clearly

directed at Litton and not Fremont." Pls.' Opp'n to Fremont Mot. Dismiss at 37. The Court concludes that it must dismiss count 2 against Fremont.

### c. Count 3 - Common Law Fraud

Fremont argues that count 3, which is a claim for common law fraud, is not pled with sufficient particularity under Federal Rule of Civil Procedure 9(b). Fremont states that the Carrolls do not allege a single representation or misrepresentation made by Fremont or any Fremont representative, and do not plead how or when any such misrepresentation was communicated. To the extent the loan application incorrectly stated the Carrolls' income, Fremont asserts, that information was not prepared by Fremont, and the Carrolls reviewed and certified the information in the application to Fremont. The Carrolls rejoin that Fremont conspired with the other defendants to defraud them, or that the other defendants were agents of Fremont, and therefore the fraud of the other defendants may be attributed to Fremont. The material misrepresentation, according to the Carrolls was the false statement of their income, assets and ability to carry the mortgage in the application, which misled them into believing that they could afford the loan. The Court concludes that the Carrolls have stated their fraud claim with sufficient particularity to allow Fremont to prepare a response. Here, the Carrolls allege that Fremont or its agents falsified their income and assets on the loan application, thereby inducing the Carrolls to enter into a loan they could not afford. Therefore, the Court denies Fremont's motion to dismiss with respect to the Carrolls' fraud count.

### d. Count 4 - Permanent Injunction

Fremont argues that count four must be dismissed against it because it no longer holds the loan. The Carrolls respond that count 4 should not be dismissed because it is unproven who

owns the mortgage.  The Carrolls' amended complaint, however, states that Fremont assigned the mortgage to Litton and does not contain any facts to support an allegation that Fremont holds the loan.  Am. Compl. ¶ 1.  Therefore, the Court dismisses count 4 against Fremont.

> *e.  Counts 5, 8, and 10 - Breach of Fiduciary Duty, Negligence and Gross Negligence*

Fremont argues that counts 5, 8 and 10 should be dismissed against it because Fremont did not owe a legal duty to the Carrolls beyond the contractual relationship.  The Carrolls respond that Fremont concedes that it could have a fiduciary relationship with the Carrolls, and that there was a standard of care and duty to meet the standard required by that relationship, which Fremont failed to meet.  The Carrolls fail to state any facts that would support a legal duty owed to them, instead stating only the elements of the claims alleged in a conclusory fashion. Therefore, the Court dismisses these counts.  *See Overseas Private Inv. Corp. v. Industria de Pesco, N.A., Inc.*, 920 F. Supp. 207, 210 (D.D.C. 1996) ("The relationship between a debtor and a creditor in a loan transaction is ordinarily a contractual relationship . . . and is not fiduciary in nature.") (internal quotation omitted).

> *f.  Counts 6 and 7 - Conspiracy and Aiding and Abetting*

Fremont argues that the Carrolls' conspiracy and aiding and abetting claims do not state valid claims for several reasons, including that these claims are not recognized under District of Columbia law as independent torts, that the Carrolls do not allege that Fremont was party to any agreement with or provided substantial assistance to another, and that a corporation cannot conspire with its agents or employees.  The Carrolls rejoin that the amended complaint lays out

in detail the financial motivations and benefits that defendants derived, how the unlawful acts were carried out, and how defendants pursued a common objective – money.

Civil conspiracy is not recognized as an independent tort in the District of Columbia, but "is a means for establishing vicarious liability for [an] underlying tort." *Exec. Sandwich Shoppe v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000) (quoting *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983). A corporation cannot, however, conspire with its employees or agents, because "a corporation and its agents constitute a single legal entity that cannot conspire with itself." *Tabb v. District of Columbia*, 477 F. Supp. 2d 185, 190 (D.D.C. 2007); *see also Fraidin v. Weitzman*, 611 A.2d 1046, 1078 (Md. App. 1992). The Carrolls allege that Premier Mortgage and its employees and agents were agents of Fremont and were acting on behalf of Fremont. Compl. ¶ 58. Because Fremont cannot conspire with its agents, the Carrolls' conspiracy claim must be dismissed.

A claim of aiding and abetting is also not an independent tort, but a means of establishing vicarious liability in the District of Columbia. *See Halberstam*, 705 F.2d at 476. To prevail on an aiding and abetting claim, a plaintiff must show three elements: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Id.* at 477.

The Carrolls state that "[d]efendants aided and abetted the violations of the Consumer," Compl. ¶ 111, but the Carrolls do not make any factual allegations regarding the way in which Fremont substantially assisted any other defendant in unlawful conduct. Because the Carrolls

18

have not alleged that Fremont provided substantial assistance to another party, their aiding and abetting claim must be dismissed.

### g.  Count 9 - Negligent Supervision

Fremont argues that the Carrolls' negligent supervision claim must be dismissed because the claim is premised on a statutory violation and because the Carrolls do not allege that Fremont *employed* any of the other defendants.  The Carrolls respond that this count is asserted against Fremont for its failure to supervise its agents, the mortgage broker and appraiser defendants.

"To establish a cause of action for negligent supervision, a plaintiff must show:  that the employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee."  *Phelan v. Mount Rainier*, 805 A.2d 930, 937-38 (D.C. 2002) (internal quotation omitted).  A claim of negligent supervision must be based on a duty at common law.  *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 576 (D.C. 2007).  To prevail on a negligent supervision claim, the plaintiff need not prove that the party supervised was an employee or agent of the defendant.  *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 760 n.11 (D.C. 2001).  Under similar factual circumstances, this Court has allowed a claim of negligent supervision against a lender for injuries caused by its alleged agents, a mortgage broker and its employees.  *See Johnson v. Long Beach Mortg. Loan Trust*, 451 F. Supp. 2d 16, 34-35 (D.D.C. 2006).  Here, the Carrolls have alleged that Fremont negligently supervised its agents.  This allegation is sufficient.  Further this claim is based on a common law duty – fraud.  Therefore, the Court concludes that dismissal of the negligent supervision claim is not warranted.

In conclusion, the Court determines that it should grant Fremont's motion to dismiss with respect to counts 2, 4, 5, 6, 7, 8 and 10, and deny Fremont's motion to dismiss with respect to counts 1, 3 and 9.

**B.     Litton's Motion to Dismiss or for Summary Judgment**

Litton also moves to enforce the settlement agreement or in the alternative to dismiss the Carrolls' claims against it under Federal Rules of Civil Procedure 12(b)(6) and 9(b).[3]  Litton argues that as a transferee, the note holder can assert the same defenses as Fremont to claims brought by the Carrolls.  Therefore, Litton adopts and incorporates by reference the arguments in Fremont's motion to dismiss or for summary judgment and moves for dismissal on the same grounds.  Further, Litton argues that the amended complaint makes no allegation that Litton or the note holder participated in the origination of the loan or committed any wrong whatsoever.  The Carrolls respond by incorporating all of their arguments with respect to Fremont.  The Carrolls also allege that Litton or the note holder acted with complicity by taking the assignment with knowledge of the unlawful mortgage transaction at the inception of the loan and the mortgage fraud by Fremont and the mortgage brokers.

For the same reasons that the Court denied Fremont's motion for summary judgment, it also denies Litton's motion for summary judgment.  Litton, however, raises an additional argument for why this Court should grant its motion for summary judgment based on the alleged settlement agreement.  Litton argues that the Court should apply the doctrine of equitable

---

[3]  Litton explains in its memorandum that while it is identified in the amended complaint as the current owner of the mortgage, the actual owner is HSBC Bank USA, National Association and Litton is the servicer of the loan.  Litton states that it files this motion in its own capacity and on behalf of the note holder in its capacity as loan servicer for that entity.  Litton Mot. Dismiss at 1 n.1.

estoppel, under which "a party with full knowledge of the facts, which accepts the benefits of a

transaction, contract, statute, regulation, or order may not subsequently take an inconsistent

position to avoid the corresponding obligations or effects."  *Thoubboron v. Ford Motor Co.* 809

A.2d 1204, 1212 (D.C. 2002) (citing *First Am. Disc. Corp. v. Commodity Futures Trading

Comm.*, 222 F.3d 1008, 1016 (D.C. Cir. 2000)).  "The doctrine of equitable estoppel 'is a means

of precluding a litigant from asserting an otherwise available claim or defense against a party

who has detrimentally relied on that litigant's conduct.'" *United States v. Philip Morris Inc.*, 300

F. Supp. 2d 61, 70 (D.D.C. 2004) (citing *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111

(D.C. Cir. 1988)).

Litton argues that it relied on the Carrolls' assent to the settlement agreement when it did

not foreclose on their home.  Detrimental reliance, however, is not enough.  The traditional

elements of equitable estoppel are (1) a "definite" representation to the party claiming estoppel,

(2) the party relied upon its adversary's conduct to its detriment, and (3) reliance on the

representation was "reasonable."  *Graham v. SEC*, 222 F.3d 994, 1007 (D.C. Cir. 2000).  "It is

not essential to the creation of an equitable estoppel . . . that the party sought to be estopped

should have had an actual intent to deceive, defraud, or mislead."  *Cassidy v. Owen*, 533 A.2d

253, 255 (D.C. 1987) (internal citations omitted).  There must, however, be a "definite

misrepresentation."  *See Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 59 (1984).

Here, while Litton might argue that it was a definite misrepresentation for the Carrolls to

sign and return the front page of the contract, omitting from their correspondence their intent not

to agree to the remainder of the contract, this argument does not convince the Court.  While the

Carrolls' actions may have misled Litton, their omission was not a definite misrepresentation.  In

21

fact, by signing and returning *only* the first page, the Carrolls could plausibly argue that they made no misrepresentation at all but evidenced their intent to agree only to the first page.

The Court, therefore, turns to Litton's motion to dismiss. Whether the Carrolls may bring their *common law* claims against Litton depends upon whether Litton is a holder in due course. *See Slaughter v. Jefferson Fed. Sav. & Loan Ass'n*, 538 F.2d 397, 399-400 (D.C. Cir. 1976). The District of Columbia Code defines a holder in due course as the holder of an instrument if: (1) "The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity;" and (2) "The holder took the instrument (i) for value, (ii) in good faith, and . . . (vi) without notice that any party has a defense [against it]." D.C. Code § 28:3-302(a). A person has "notice" of a fact when "(a) he has actual knowledge of it; or (b) he has received a notice or notification of it; or (c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists." D. C. Code § 28:1-201(25).

Here, the Carrolls allege that defendants (including Litton) knew or should have known that the Carrolls could not afford the loan and that there was no reasonable probability that the Carrolls could pay it. Am. Compl. ¶¶ 45, 75. In their opposition to Litton's motion to dismiss, plaintiffs further explain that because of their prior lawsuit, Litton was on notice of the Carrolls' defenses. The Court concludes that at this stage, these factual allegations are sufficient, and dismissing *all* of the Carrolls' common law claims against Litton is premature. Litton's liability, however, is only derivative of any liability Fremont may have. *See Bynum*, 2005 WL 818619, at * 6 ("An assignee merely steps into the shoes of the assignor. Accordingly, an assignee's liability can be no greater than the assignor's.") (citing *SEC v. Bilzerian*, 378 F.3d 1100, 1008

22

(D.C. Cir. 2004)).  Therefore, the Court must dismiss those claims against Litton that is has

dismissed against Fremont.  The Court does not dismiss counts 2 and 4, however, which are for

declaratory and injunctive relief, and are appropriately brought against Litton, allegedly the

current holder of the loan.

The Carrolls' *statutory* claims against Litton under the DCCPPA are governed by the

provisions of the District of Columbia's consumer protection laws.  The Carrolls recognize this,

stating "Defendant Litton is named as a Defendant under [the DCCPPA count] to the extent of

and subject to D.C. Code § 28-3808."  Am. Compl. ¶ 88.  That provision, however, is

inapplicable to this case.  *See Johnson*, 451 F. Supp. 2d at 53 (D.D.C. 2006) ("Plaintiff's

assertion of derivative claims . . . pursuant to D.C. Code § 28-3808 fails because Plaintiff cannot

assert claims against an assignee except 'as a matter of defense or set-off against a claim by the

assignee.'") (citing D.C. Code § 28-3808(b)).  Moreover, assignee liability under that provision

appears to be limited to "consumer credit sale[s]," which are limited to transactions where the

amount financed does not exceed $25,000.  D.C. Code §§ 28-3802 & 28-3808; *see Hancock v.

Homeq Servicing Corp.*, 2007 WL 1238746, at *10 (D.D.C. April 27, 2007). Therefore, the

Court dismisses the Carrolls' first count as against Litton.

In sum, the Court concludes that it should grant Litton's motion to dismiss with respect to

counts 1, 5, 6, 7, 8, 9 and 10 and should deny Litton's motion to dismiss with respect to counts 2,

3, and 4.

**C.      Individual Defendants' Motions to Dismiss or for Summary Judgment**

The individual defendants essentially adopt Fremont's arguments.  *See, e.g.*, Okebugwu

Mot. Dismiss at 8 ("To the extent applicable, and not in contradiction to Defendant Okebugwu's

argument, with respect to Defendant Fremont's Motion to Dismiss, Defendant Okebugwu incorporates by reference, as if fully set forth herein, Defendant Fremont's argument that Plaintiffs' claims were released pursuant to the Forbearance Agreement."). The individual defendants do not make any new arguments.

The Court denies the individual defendants' motions for summary judgment because the settlement agreement does not apply to the individual defendants. With respect to the individual defendants' motions to dismiss the Court grants them with respect to counts 2, 4, 5, 6, 7, 8, 9 and 10, and denies them with respect to counts 1 and 3 for the reasons stated in this memorandum opinion.

## III.  CONCLUSION

Accordingly, it is this 20th day of July 2009, hereby

**ORDERED** that defendant Fremont's motion for summary judgment [#50] is **DENIED**; and it is further

**ORDERED** that defendant Fremont's motion to dismiss [#49] is **GRANTED** with respect to counts 2, 4, 5, 6, 7, 8, and 10 of plaintiffs' complaint and is **DENIED** with respect to counts 1, 3, and 9; and it is further

**ORDERED** that defendant Litton's motion for summary judgment [#66] is **DENIED**; and it is further

**ORDERED** that defendant Litton's motion to dismiss [#65] is GRANTED with respect to counts 1, 5, 6, 7, 8, 9, and 10 of plaintiffs' complaint and is DENIED with respect to counts 2, 3 and 4; and it is further

**ORDERED** that defendants Okebugwu, Ingram and Smith's motions for summary

judgment [##67, 68, 69] are **DENIED**; and it is further

**ORDERED** that defendants Okebugwu, Ingram, and Smith's motions to dismiss [## 67,

68, 69] are **GRANTED** with respect to counts 2, 4, 5, 6, 7, 8, 9, and 10 of plaintiffs' complaint

and **DENIED** with respect to counts 1 and 3.

Henry H. Kennedy, Jr.
United States District Judge

25